**Joseph J. CROWLEY, on Behalf of the CORNING, INC. INVESTMENT PLAN, and on Behalf of a Class of All Other Persons Similarly Situated, Plaintiff,**

v.

**CORNING, INCORPORATED, et al., Defendants.**

No. 02–CV–6172.

United States District Court, W.D. New York.

Dec. 9, 2002.

Patrick A. Klingman, Esq., Robert A. Izard, Esq., Wayne T. Boulton, Esq., Schatz & Nobel, P.C., Hartford, CT, Eugene Welch, Esq., Harris, Chesworth & O'Brien, Rochester, NY, for Plaintiff.

Eugene D. Ulterino, Esq., Ryan T. Jenny, Esq., Carolyn G. Nussbaum, Esq., Nixon Peabody LLP, Rochester, NY, for Defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

## INTRODUCTION

This Employee Retirement Income Security Case ("ERISA") case is before the Court on defendants' motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

1. Defendants also brought their motion pursuant to Federal Rule of Civil Procedure 9(b), but have withdrawn their arguments on that point in light of plaintiff's withdrawal of his Third cause of action. *See* Defs.' Reply Mem.

After considering the papers filed in support of, and in opposition to, the motion, and oral argument having been heard on December 4, 2002, the Court grants defendants' motion and dismisses the case.

## LEGAL STANDARD FOR A MOTION TO DISMISS

In considering a motion for dismissal under Rule 12, a defendant must show that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *see also* 2 Moore's Federal Practice, § 12.34[1][a] (Matthew Bender 3d ed.). The Court must view the complaint, and draw all reasonable inferences, in the light most favorable to the non-moving party. *Id.; see also* 2 Moore's Federal Practice, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true).

Both parties have relied upon documents outside the complaint in support of their positions. As the Court of Appeals stated, "[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... as well as public disclosure documents require by law to be, and that have been, filed with the SEC ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the" *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (citation omitted). Thus, the Court will employ the same rule in examining the papers outside the complaint relied upon by the parties here. However, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. *Jacobson v. Peat, Mar-*

*wick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y.1977); *Sansom Comm. v. Lynn,* 366 F.Supp. 1271, 1278 (E.D.Pa.1973); *Chambliss v. Coca–Cola Bottling Corp.,* 274 F.Supp. 401, 409 (E.D.Tenn.1967), *aff'd on other grounds,* 414 F.2d 256 (6th Cir. 1969), *cert. denied,* 397 U.S. 916, 90 S.Ct. 921, 25 L.Ed.2d 97 (1970)." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984).

## FACTUAL BACKGROUND

Plaintiff, a resident of Georgia, and over the age of 55, is a retiree of Corning, Incorporated ("Corning"), who was and is a participant in the Corning Investment Plan ("Plan"). 29 U.S.C. § 1002(7) (1999). Corning is the sponsor of the Plan. The Plan, by its own terms, is governed by New York law and by the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. 93–406, Title I, § 2, Sept. 2, 1974, 88 Stat. 832, codified at 29 U.S.C. § 1001 (1999), *et seq.* Jurisdiction in this court arises under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and venue is proper here in this District, since the Plan is administered here and plaintiff alleges that the breaches of fiduciary duties occurred here. Plaintiff is bringing this action as a class action under Federal Rule of Civil Procedure 23. The issue of whether this action should be certified as a class action is not at present before the Court.

### 1. *Defendants Named in the Amended Complaint*

Plaintiff is suing Corning and a number of individuals. John Does 1–30 are the individual members of the Plan's Investment Committee ("Committee"). John S. Brown, James B. Flaws, John H. Foster, Gordon Gund, John M. Hennessy, James

---

Supp. Mot. Dismiss at 1, n 1; Pl.'s Am. Mem.

Opp'n Mot. Dismiss at 30.

R. Houghton, James J. O'Connor, Catherine A. Rein, Deborah D. Rieman, H. Onno Ruding, William D. Smithburg, Hansel E. Tookes, II, Peter F. Volanakis, and Wendell P. Weeks, are or were individual members of Corning's Board of Directors ("Board" or "Board of Directors"), as are Richard Roes 1–30, whose identities are unknown to plaintiff.

### 2. *The Plan*

The Plan is a "defined contribution" or "individual account" plan under ERISA § 3(34), 29 U.S.C. § 1002(34) (1999). Each participant has an individual account under the Plan. Benefits are based on the amount contributed by a participant to his or her account, along with any income, expenses, gains, losses, and forfeitures, which may be allocated to such participant's account. The Plan gives participants different options for investment of their contributions, including a money market fund, a bond fund, a variety of equity funds, and Corning stock. The Plan also provides that Corning would make matching contributions in cash [2] out of its profits, and that all such matching contributions were required to be invested in the Corning stock fund, an Employee Stock Ownership Plan ("ESOP"). Thus, a participant in the Plan can direct his own contributions to any of the offered investment funds, but the matching contributions were to be used to purchase Corning stock. The Committee, under Plan § 6.5, has the discretion to determine what funds would be offered to plan participants for their investments. Further, under the Plan, fund participants over age 55 are allowed to move not only their own voluntary contributions, but also the Corning matching contributions, to one of the twelve available investment funds. Additionally, the Plan requires that the Board of Directors appoint the members of the Committee, who are designated by the Plan as the fiduciaries [3] and plan administrators as those terms are defined by ERISA. Plan Article VII. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (1999).

### 3. *Plaintiff's Allegations*

Plaintiff, in his amended complaint, alleges that defendants, as fiduciaries of the Plan, were required under ERISA to furnish certain information to the participants, including the Summary Plan Description ("SPD"). According to plaintiff, the SPD apprised participants of their rights under the Plan, and incorporated by reference all of the documents filed by Corning with the Securities and Exchange Commission ("SEC"). *See* ERISA § 102, 29 U.S.C. § 1022 (1999). Further, plaintiff alleges that defendants had the discretion to establish and change the investment alternatives offered to Plan participants as well as direct investment of the Plan's assets allocated to their accounts. He also alleges that defendants had a "duty to obtain from [Corning] information necessary for the proper administration of the Plan." Am. Compl. ¶ 31.[4]

---

**2.** Defense counsel pointed out at oral argument that the Plan was amended in 2000 and after the amendment, all matching contributions by Corning were made with Corning stock.

**3.** Plaintiff's counsel conceded, contrary to the allegation in the Amended Complaint, that under ERISA the Committee is the named fiduciary, not Corning, Inc., or its Board; however, counsel did argue that Corning and the Board were fiduciaries by virtue of their conduct.

**4.** At oral argument, plaintiff's counsel urged that with a profit to earnings ratio of 120, the Corning stock fund and Corning stock was too risky an investment for a retirement account; however, these factual allegations are not contained in the Amended Complaint and, thus are not available to support plaintiff's position.

According to plaintiff's amended complaint, on September 27, 2000, Corning announced that it had agreed to acquire Pirelli S.p.A.'s ("Pirelli") interest in Pirelli's optical components and devices business, Optical Technologies USA, for approximately $3.6 billion in cash. Plaintiff alleges that Corning disseminated to the market, through a press conference and national media networks, that this acquisition was necessary to keep up with demand for its products resulting from companies upgrading telephone networks. According to plaintiff, on October 23, 2000, Corning filed with the SEC a Form 8–K which plaintiff contends contains the following statements which he alleges are false or misleading:

> "As the quarter's performance clearly shows, we continue to benefit from delivering powerful optical technologies that provide capacity to double Internet traffic every six months," said Roger G. Ackerman, Corning's Chairman and Chief Executive Officer. *"We met exceptionally robust demand for our optical-networking technologies by sourcing products from our expanded network of five optical fiber plants and nine photonic technology plans on four continents . . . ."*
>
> *"Looking forward to 2001," Ackerman said, "we believe our key growth businesses will lead the way for strong revenue and earnings growth throughout 2001. Consistent with our long-term growth objectives, we expect earnings to grow next year at a rate of about 25%."*

Am. Compl. ¶ 34 (quoting SEC Form 8–K (Oct. 23, 2000) at 3) (emphasis added by plaintiff). Plaintiff also maintains that on November 3, 2000, Corning filed with the SEC the following false or misleading statements:

> We expect full year 2000 pro forma diluted earnings per share in the range of $1.15 to $1.17, an increase of approximately 78% compared to 1999. *We expect earnings to grow at a rate of approximately 25% in 2001.* The Corel the acquisition, as described below, is expected to be less than 5% diluted to our 2001 pro forma earnings per share and accretive thereafter, resulting in 2001 pro forma diluted earnings per share in the range of $1.40 to $1.43.

Am. Compl. ¶ 35 (quoting SEC Form 424B5 (Nov. 3, 2000)) (emphasis added by plaintiff). Plaintiff alleges that these statements were false and misleading when issued because they misrepresented, or omitted the following adverse facts:

(1) that demand for Corning's optical network technologies was not "exceptionally robust," but was, instead, weakening as Corning's primary customers were experiencing severe and persistent business slowdowns;

(2) That the purportedly "exceptionally robust demand" Corning had experienced was the result of a massive inventory buildup at Corning's customers and was therefore not truly reflective of the mark demand for Corning's products;

(3) that Corning was amassing hundreds of millions of dollars of obsolete inventory which would have to be written-off;

(4) that the Pirelli acquisition was fraught with extreme risk as the business that Corning had acquired from Pirelli had only one customer, Cisco, and that customer was struggling with a substantial downturn in its business; and

(5) that given the foregoing, the projection of 25% earnings growth in 2001 was lacking in a reasonable basis at all times. Am. Compl. ¶ 36.

Plaintiff also refers to statements in Corning's November 3, 2000, filing with

the SEC in which it warned that its sales would suffer if one or more of its key customers reduced orders for products. Plaintiff alleges that the statements were materially false and misleading because, at the time they were made, demand for Corning's products had already slowed, which was already having an adverse impact on Corning's results and operations. Further, plaintiff alleges that Corning's statement, "as our customers' needs for our products increase, we must increase our manufacturing volumes to meet these needs," was false and misleading, since need for Corning's products was not increasing and the risk faced by Corning was not the inability to manufacture sufficient volume, but rather, that supply would far outstrip demand, resulting in a sharp decline in the price of Coming's products and Corning's revenues and earnings.

Plaintiff further alleges in his amended complaint that on July 10, 2001, Corning announced: that it was taking a $5.1 billion charge primarily related to the acquisitions of Pirelli and NetOptix; that it would write off $300 million in excess and obsolete inventory; and that it would cut 1,000 jobs and close three plants. Plaintiff also refers to a July 10, 2001, article in THE WALL STREET JOURNAL which reported that despite having made increasingly conservative earnings projections during the previous six months, Corning "continued to overestimate customer demand for the gear that powers telecommunications networks." Am. Compl. ¶ 39. Plaintiff maintains that on July 10, 2001, Corning's shares were trading as low as $14.12. *See* Am. Compl. ¶ 40, and that on July 25, 2001, Corning reported a second-quarter loss of $4.76 billion, or $5.13 per share, which included a $4.8 billion charge related to absorbing inventory, goodwill writedowns and factory shutdowns in its photonics division. According to plaintiff, Corning stock closed on July 25 at $13.77

per share, a decrease of approximately 80% from the start of the alleged class period (September 26, 2000 through July 25, 2001).

Plaintiff alleges that defendants breached their fiduciary duties to the Plan, including those set forth in ERISA, by: (1) permitting the Plan to purchase Corning stock when it was improvident to do so; (2) misrepresenting and failing to disclose material facts to the Plan and the Participants in connection with the administration of the Plan; (3) failing to exercise their fiduciary duties to the Plan and the Participants solely in the interests of the Participants and their Beneficiaries for the exclusive purpose of providing benefits to Participants and their Beneficiaries; and (4) failing to manage the Plan's assets with the care, skill, prudence or diligence of a prudent man under the circumstances and imprudently failing to diversify the investments in the Plan so as to minimize the risk of large losses. Am. Compl. ¶ 2.

Plaintiff's complaint raises four causes of action under ERISA. In his memorandum of law filed in opposition to defendant's motion, plaintiff withdrew the Third cause of action. In the three remaining causes of action, plaintiff alleges that defendants breached their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104 (1999) and 29 C.F.R. Part 2550 (July 1, 2002), by: (1) continuing to offer Corning stock as an investment alternative under the Plan; (2) making material misrepresentations and nondisclosures about Corning stock, which resulted in the Plan suffering losses; and (3) over allocating assets into Corning stock, thereby failing to diversify assets so as to minimize the risk of large losses.

## DISCUSSION

Defendant's motion is premised on its argument that plaintiff's claims are legally

insufficient, that is, that each cause of action in the amended complaint fails to state a claim. The Court agrees.

### 1. *Claims against Corning*

▮▮▮ Plaintiff alleges in his amended complaint that Corning was a plan administrator, and as such had a fiduciary responsibility to Plan participants.[5] However, the Plan provisions to which plaintiff refers directly contradict this contention. The responsibility to administer the Plan belongs to the Committee. Plan § 7.3; ERISA § 3(16)(A)(1), 29 U.S.C. § 1002(A)(1). Corning, as settlor or sponsor of the Plan, does not act as a fiduciary. *Lockheed v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). As the Supreme Court wrote in *Spink*,

> Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans in *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), "employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.*, at 78, 115 S.Ct. 1223 (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir.1990)). When employers undertake those actions, they do not act as fiduciaries, 514 U.S. at 78, 115 S.Ct. 1223, but are analogous to the settlors of a trust, *see Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir.1994).

▮▮▮ As to Corning, plaintiff's first claim that defendants imprudently continued to offer participants the ability to invest in Corning stock must fail, since it is clear from the amended complaint[6] that Corning could not control investment options. Similarly, plaintiff's second cause of action, that defendants made material misrepresentations and nondisclosures concerning Corning's future performance and that the fiduciaries of the Plan were charged with operating the Plan in the best interest of the beneficiaries, fails, since it is apparent from the amended complaint that such statements, regardless of truth or falsity, were not made by Corning in any fiduciary capacity regarding the Plan. On this point, plaintiff's reliance on *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) is misplaced. Variety Corp. was the plan administrator in that case, and here Corning is clearly *not* the Plan administrator. *See Hull v. Policy Management Systems Corporation*, No. 3:00–778–17, 2001 WL 1836286 (D.S.C.2001) (distinguishing *Varity Corp.* case in a situation analogous to the one at bar). Finally, plaintiff's third claim that defendants mismanaged Plan assets can not be maintained against Corning, since the amended complaint states that Corning was not charged with this function. To the extent that plaintiff is making *respondeat superior* argument, the Court rejects it. *See Bannistor v. Ullman*, 287 F.3d 394, 408 (5th Cir.2002) (ERISA liability imposed on a principal only when it had *de facto* control of agent in order to control disposition of plan assets). The Amended Complaint contains no factual allegations which support a claim that Corning had *de facto* control over the Committee members.

Viewing the complaint and drawing all reasonable inferences in the light most

---

**5.** It should be noted that during oral argument, counsel for plaintiff indicated that this allegation in the amended complaint was inaccurate.

**6.** In referring to the amended complaint, the Court includes attached and incorporated documents.

favorable to the non-moving party, the Court finds that plaintiff can prove no set of facts in support of his claims against Corning that would entitle him to relief. Thus, the causes of action against Corning must be dismissed.

### 2. *Claims against the Board of Directors*

■ While the Board of Directors does have a fiduciary responsibility with respect to the Plan, it is a limited one. A fiduciary is defined as follows:

A person is a fiduciary with respect to a plan to the extent (i) he exercises *any discretionary authority or discretionary control respecting management of such plan* or exercises any authority or control respecting the management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (1999) (emphasis added).

*Spink,* 517 U.S. at 890, 116 S.Ct. 1783. The only power the Board had under the Plan was to appoint, retain, or remove members of the Committee. Plan § 7.1. Thus, the Board's fiduciary obligations can extend only as to those acts. *See Independent Association Of Publishers' Employees, Inc. v. Dow Jones & Company, Inc.,* 671 F.Supp. 1365, 1367 (S.D.N.Y.1987) ("[t]he only power that Dow Jones retains with respect to managing, or administering the Plan is the authority to appoint, retain and remove members of the Advisory Committee.... Therefore, Dow Jones' fiduciary obligations can extend only to those acts"); ERISA § 3(21)(A), 29 U.S.C.

§ 1002(21) (defining fiduciary). In that regard, plaintiff's amended complaint makes no allegation that the Board of Directors breached any fiduciary duty when it appointed members of the Committee under Plan § 7.1, or when it acted, if it did, to appoint an Investment Advisor under Plan § 1.28.

Plaintiff's first claim that defendants imprudently continued to offer participants the ability to invest their plan funds in Corning stock fails as to the Board, as is apparent from plaintiff's amended complaint, the Board did not control investment options.

Plaintiff's second claim that defendants made material misrepresentations and nondisclosures concerning Corning's future performance and that the fiduciaries of the Plan were charged with operating the Plan in the best interest of the beneficiaries fails, based upon a reading of the amended complaint, since the Board was not charged under the Plan with the duty of communicating information to the Plan participants or beneficiaries as to plaintiff's third claim that defendants mismanaged Plan assets, this is like wise without merit as to the Board, since the amended complaint establishes that the Board did not control the management of the Plan's assets, thus, this claim must fail as against them. As with Corning, the Court rejects any *respondeat superior* argument relating to the Board. *See Bannistor v. Ullman,* 287 F.3d at 408. The Amended Complaint contains no factual allegations which support a claim that the Board had *de facto* control over the Committee members.

Viewing the complaint and drawing all reasonable inferences in the light most favorable to the non-moving party, the Court finds that plaintiff can prove no set of facts in support of his claims against the Board of Directors that would entitle him

to relief. Thus, the causes of action against the Board must be dismissed.

### 3. *Claims against the Committee*

■ Plaintiff's claims against the Committee are premised on his allegation that the Committee members failed to disclose material non-public information about Corning that they were permitted to disclose under law, or failed to independently investigate Corning's earnings statements, and thereby failed act to avoid the loss experienced by Plan participants when Corning stock fell in value. *See* Am. Compl. ¶ 46. Plaintiff does not name the Committee members in his Amended Complaint, other than as John Does 1–30. Am. Compl. ¶ 9. Nor, does plaintiff allege that the John Does knew that information promulgated by Corning, through the media or its filings with the SEC, was false or misleading, other than to allege in conclusory terms, "they knew or should have known the facts alleged above and knew or should have known that the Plan should not have invested in Corning stock." Am. Compl. ¶ 47. Further, plaintiff has made only conclusory allegations insufficient to show that following the ESOP portions of the Plan was imprudent under the circumstances. *See In re McKesson HBOC, Inc. ERISA Litigation,* No. C00–20030RMW, 2002 WL 31431588, 29 Employee Benefits Cas. 1229 (N.D.Cal. Sep. 30, 2002) ("In order to plead such a claim, however, it is fitting to require plaintiffs to allege underlying facts that demonstrate that the fiduciaries abused their discretion in continuing to hold such a high percentage of company stock").

Even if the Committee could have used non public inside information to the plan participants' benefit, all of plaintiff's causes against the Committee members rest on the assumption that the they *possessed* the "adverse information" outlined in the Amended Complaint at paragraph 36. However, the Court repeats that the Amended Complaint makes no specific allegation that the Committee members actually possessed the "adverse information." A complaint that contains only conclusory allegations and lacking any factual assertions for support fails even the liberal standard of Federal Rule of Civil Procedure 12(b)(6). *De Jesus v. Sears Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.1996). Further, the Court must view the Committee's actions as of the time of their actions, not with perfect hindsight. *Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir.1984). Here, plaintiff makes no allegation that Committee members themselves "had any actual knowledge of any misinformation or that they participated in the dissemination of information they knew or should have known was misleading ... [or] ever made any purchases of [Corning] stock at more than market price, or that they purchased or held stock in contravention of information generally available to investors and the then existing advice of market experts." *Hull,* 2001 WL 1836286 at *8 (footnote omitted). Rather, plaintiff's allegations are made against all defendants, without specifying when the "adverse information" was available, or known, to Committee members, or any single one of them. *See* Am. Compl. at ¶ 47 (alleging generally that "defendants" knew or should have known not to invest in Corning stock).

The Court is not imposing the higher pleading standard of Federal Rule of Civil Procedure 9(b) to this case. Rule 9(b) requires in "all averments of fraud or mistake" that the pleader state "the circumstances constituting fraud or mistake ... with particularity." Plaintiff is alleging

the Committee[7] breached its fiduciary duties, not that it committed fraud. Nevertheless, even under Federal Rule of Civil Procedure 8, plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief," and plaintiff has failed to do so in his Amended Complaint.

### CONCLUSION

In view of the foregoing, the Third cause of action is dismissed as withdrawn, and the Fourth cause of action is renumbered as the Third. Defendants' motion (docket # 8) is granted and the Amended Complaint (docket # 3) is dismissed with respect to all defendants.

It Is So Ordered.

---

7. This is less clear with respect to the Board of Directors and Corning as defendants. For those defendants, it very much appears that plaintiff is alleging they committed fraud. *See, e.g.,* Am. Compl. ¶ 38 (alleging corporate statements about earnings in Coming's Nov. 3, 2000 Form 424B5, filed with the SEC, were "materially *false and misleading*") (emphasis added). However, in light of the Court's dismissal of the complaint against Corning and the Board, it need not address this issue here.