270 F.Supp.2d 272 (2003)
Linda L. LALONDE, Individually and on behalf of all others similarly situated, Plaintiffs,
v.
TEXTRON, INC., Textron Savings Plan, Textron Savings Plan Committee, John Does 1-10, and Putnam Fiduciary Trust Company, Defendants.
Michelle A. Simon-Grech, Individually, and on behalf of all others similarly situated, Plaintiffs,
v.
Textron, Inc., Textron Savings Plan, Textron Savings Plan Committee, John Does 1-10, and Putnam Fiduciary Trust Company, Defendants.
Nos. 02-334S, 02^91S.
United States District Court, D. Rhode Island.
June 24, 2003.
*274 David J. Strachman, Mclntyre, Tate, Lynch & Holt, Counsellors at Law, Providence, RI, Joe R. Whatley, Jr., Esq., Whatley Drake, LLC, Birmingham, AL, Lee Squitieri, Esq., Squitieri & Fearon, LLP, New York City, Charles J. Piven, Esq., Law Offices of Charles J. Piven, P.A., Baltimore, MD, G. Douglas Jones, Whatley Drake, LLC, Birmingham, AL, for plaintiffs.
John A. Tarantino, Paul V. Curcio, Adler, Pollock & Sheehan, Inc., Providence, RI, Mitchell A. Karlan, Esq., Gibson, Dunn & Crutcher LLP, New York City, Karl G. Nelson, Esq., Dallas, TX, William J. Kilberg, Esq., Gibson, Dunn & Crutcher LLP, Washington, DC, for Defendant Textron, Inc. and Textron Savings Plan.
Joseph V. Cavanagh, Jr., Staci L. Kolb, Blish & Cavanagh, Providence, RI, James O. Fleckner, Esq., James S. Dittmar, Esq., Goodwin Proctor LLP, Boston, MA, for Defendant Putnam Fiduciary Trust Company.

OPINION AND ORDER
SMITH, District Judge.
This case presents a challenge to the practice of investing employee pension contributions, and the employer's matching contributions, in the employer company's stock through the vehicle known as an *275 "ESOP," an Employee Stock Ownership Plan. Essentially the Plaintiffs claim that continuing to invest in the home team's stock, even as the stock was falling in value, constitutes a breach of fiduciary duty by the employer and its plan trustee under the Employee Retirement Income Security Act (ERISA).
The Employer, the Plan and the Trustee maintain that investment in Company stock through employee and employer ESOP pension contributions in a down market is not only permissible, but was specifically contemplated by Congress when it passed ERISA. They move to dismiss all counts of the Complaint. As explained below, this Court agrees with the Defendants and holds that the Complaint must be dismissed.

I. Background and Facts

Plaintiffs brought this consolidated class action against Defendants Textron, Inc. ("Textron" or "Company"), Textron Savings Plan (the "Plan"), Textron Savings Plan Committee (the "Committee"), and Putnam Fiduciary Trust Company ("Putnam," and collectively the "Defendants") under the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), 29 U.S.C. § 1001 (2000), et seq., in which Plaintiffs allege violations of several provisions of ERISA. The facts, which are taken from the Plaintiffs' First Amended Class Action Complaint (the "Complaint") and its attachments,[1] are as follows.
Textron established the Plan in 1960. The Plan Document and the Trust Agreement set forth the terms of the Plan during the period at issue. The Plan was designed to invest primarily in Textron common stock and to be an employee stock ownership plan as defined in section 4975(e)(7) of the Internal Revenue Code.[2] As such, the Plan was an ERISA-regulated employee pension benefit plan. Complaint ¶ 13.
The Plan Document designates Textron as the Plan administrator, but permits Textron to empower "any committee, third party administrator, or officer" with the authority to serve as the administrator. Plan Document § 17.01. Accordingly, Textron delegated the duty of serving as Plan administrator to its Executive Vice President of Administration and Chief Human Resources Officer, its Vice President of Human Resources and Benefits, and its Vice President of Labor and Employee Relations.
The Plan's assets are held in trust by a trustee appointed by Textron pursuant to the Plan Document. During the relevant period, Textron contracted with Putnam to serve as the Plan's trustee. In accordance with a Trust Agreement dated September 1, 1999, Putnam was responsible for the property it received as trustee, but was *276 not responsible for the administration of the Plan. Trust Agreement ¶ 12.
The Plan allows eligible employees to participate by making after-tax contributions, and in certain circumstances, pre-tax contributions. Plan Document §§ 4.01, 5.01. Textron matches an employee's investment by contributing $0.50 or an equivalent amount of Textron stock for each dollar contributed by the employee. Plan Document § 6.01. During 2000 and 2001, the Plan included a variety of investment options, including high-risk and lowrisk mutual funds and the Textron Stock Fund (the "Stock Fund"). Complaint ¶¶ 16, 58. The objective of the Stock Fund is to provide investors with "the long-term growth of capital." Def. Textron's App. B, Summary Plan Description at 11.
Employee contributions to the Plan during 2000 and 2001 were allocated in the following manner: 50% of employee contributions and 100% of employer matching contributions were automatically invested in the Stock Fund. The contributions then remained invested in the Stock Fund until the employee was (1) either no longer employed by Textron or reached age 55, and (2) had been a participant in the Plan for ten years. Plan Document §§ 8.05(a), 8.07. At that time, the employee could reinvest the assets in any manner. The remaining 50% of an employee's contributions could be directed into any of the Plan's other investment options.[3]Id.
The Plaintiffs have brought this suit as participants in the Plan during calendar years 2000 and 2001. During those years, the price of Textron common stock ranged from $74.94 per share to a low of $31.65 per share. Textron paid dividends totaling $2.24 per share during that time period. After adjustments for the payment of dividends, Textron common stock lost approximately 43% of its value during 2000 and 2001. Complaint ¶¶ 49-50, 63. Plaintiffs allege that during this time frame Textron was undergoing a restructuring and "laying off thousands of employees," while simultaneously encouraging its employees to contribute to their ESOP accounts with over-inflated Textron common stock. Complaint ¶¶ 54-56. As a result, Plaintiffs allege that the Defendants violated numerous provisions of ERISA.
Plaintiffs' four-count Complaint alleges that: (1) Defendants engaged in self-dealing, prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b) (Count I); (2) Defendants violated the anti-inurement provision of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1) (Count II); (3) Defendants breached their fiduciary duties to the Plaintiffs in violation of ERISA § 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a) (Count III); and (4) Defendants participated knowingly in other fiduciaries' breaches in violation of ERISA § 405, 29 U.S.C. § 1105 (Count IV).

II. Standard of Review

In deciding Defendants' Motions to Dismiss, this Court must determine whether the Complaint states any claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). In doing so, the Court accepts all well-pleaded factual assertions as true and draws all reasonable inferences from those assertions in the Plaintiffs' favor. Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997).
In ruling on the motion, the Court may look to materials outside the Complaint when the claims expressed therein "are expressly linked toand admittedly *277 dependent upona document...." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir.1998). When such a linkage or dependance exists, "th[e] document effectively merges into the pleadings and the trial court can review it in deciding [the] motion ...." Id. See also Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir.1997) (holding that documents a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claims); Hogan v. Eastern Enters./Boston Gas, 165 F.Supp.2d 55, 58 (D.Mass.2001) (considering ERISA plan documents in ruling on a motion to dismiss). Plaintiffs made numerous references to the Plan documents in their Complaint and at oral argument. See, e.g., Complaint ¶¶ 19, 41, 46, 47-48, 52. Accordingly, it is appropriate for this Court to consider the Plan documents in ruling on Defendants' Motions to Dismiss.

III. Discussion

A. Fiduciary Duties Under ERISA

While the Plaintiffs' Complaint contains four different counts under ERISA, the common, critical (and likely dispositive) inquiry in each claim is whether the Defendants are fiduciaries and, if so, whether the Plaintiffs have sufficiently alleged facts to support a claim that Defendants breached their fiduciary duties to the Plaintiffs.
The existence of a fiduciary duty under ERISA depends upon the exercise, or the power to exercise, discretionary authority or control over the management of a plan or over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(A). Specifically, ERISA provides that a person is a fiduciary with respect to a plan
to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
ERISA § 3(21)(A); 29 U.S.C. § 1002(21)(A). Because the Plaintiffs do not provide any facts to suggest that the Defendants rendered investment advice as required by 29 U.S.C. § 1002(21)(A)(ii), the Plaintiffs must allege facts sufficient to establish the Defendants' fiduciary status under either subparts (i) or (iii). This Court must assume for purposes of this Motion that Textron and the Plan are fiduciaries under ERISA[4]. The question then is whether the Complaint contains sufficient allegations to support a claim that the Defendants breached this fiduciary duty.

1. Textron and the Plan

The heart of the Plaintiffs' Complaint is found in Count III, wherein the Plaintiffs claim that Textron and the Plan breached *278 their fiduciary duties by continuing to purchase Textron stock while it was decreasing in value and by failing to sell the stock when it was "in the best interests of the participants and beneficiaries." Complaint ¶ 77. Plaintiffs also claim that Textron and the Plan breached their fiduciary duties by encouraging Company employees to purchase stock even while the Company was restructuring its workforce and by restricting the Plaintiffs' ability to sell Textron stock despite the stock's decreasing value. Complaint ¶ 35, 42.
ERISA covers a wide range of employee benefit plans and investment vehicles. In this case, the Plan in issue is the Company's ESOP. ESOPs are unlike other benefit plans, because they have competing purposes which, at times, can be in tension with one another. Any allegation of breach of a fiduciary duty must be considered in light of the special nature of ESOPs.
An ESOP is an ERISA plan that invests primarily in "qualifying employer securities," which typically are shares of stock in the employer that creates the plan. 29 U.S.C. § 1107(d)(6)(A). In creating ESOPs, Congress sought to develop plans that would function as both "`an employee retirement benefit plan and a `technique of corporate finance' that would encourage employee ownership'" of a company. Kuper, 66 F.3d at 1457 (quoting Martin v. Feilen, 965 F.2d 660, 664 (8th Cir.1992)). As a result of these dual purposes, ESOPs are not intended to guarantee retirement funds, and they place employee retirement assets at a greater risk than the typical diversified, ERISA-regulated plan. See Moench, 62 F.3d at 568. For example, in this case, the Plan explicitly stated that it was not intended to provide for a guaranteed benefit at the time of retirement. See Def. Textron's App. B, 2000 Summary Plan Description at 11.
Nonetheless, ESOPs are governed by ERISA's requirements for fiduciaries. An ERISA fiduciary "must employ within the defined domain `the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use.'" Bedolall v. State Street Bank and Trust Co., 137 F.3d 12,18 (1st Cir.1998) (quoting 29 U.S.C. § 1104(a)(1)(B)). If a fiduciary fails to meet these stringent requirements, it may be held liable for losses to the plan that result from breaches of that duty. 29 U.S.C. § 1109(a). Consequently, ESOP fiduciaries are in the unique situation of having to facilitate the ESOP goal of employee ownership, while at the same time being bound by ERISA's rigorous fiduciary obligations. The two leading cases that have examined this interplay are Moench v. Robertson, 62 F.3d 553 (3d Cir.1995) and Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995). These two cases merit some extended discussion as this interplay is at the forefront of the dispute in this case.
In Moench, a former employee of Statewide Bancorp ("Statewide") sued his former employer for various breaches of ERISA fiduciary duties in the administration of Statewide's ESOP. Employees who chose to participate in the Statewide ESOP had their contributions deducted from their wages, which were then invested in Statewide stock. At the inception of Statewide's ESOP in 1989 the company's stock was trading at $18.25, but by May of 1991 the stock had fallen to $9.50 per share when the company filed for protection under Chapter 11 of the Bankruptcy Code. In his complaint, Moench alleged that the ESOP Committee violated its fiduciary duties by continuing to invest in Statewide stock during that period. 62 F.3d at 557. On the fiduciaries' motion for summary judgment, the trial court held that the fiduciaries of Statewide's ESOP *279 could not be held liable for following the purpose of the ESOP. On appeal, the Third Circuit overturned the district court, holding that ESOP fiduciaries can be liable under ERISA for continuing to invest in employer stock in such circumstances. See id, at 567. However, in so holding, the Third Circuit found that a presumption should exist in favor of the correctness of the decision to remain invested in company stock in light of the fact that the ESOP required primary investment in Statewide stock. See id. at 570. Balancing the competing goals of ERISA and ESOPs, the court developed an abuse of discretion standard for determining when a fiduciary is obligated to cease investing in employer stock.
[W]e hold that in the first instance, an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
Id. at 571. After adopting this abuse of discretion standard, the court determined it was unclear whether Moench had met that standard and reversed the grant of summary judgment and remanded the case to the district court.
In Kuper, the Sixth Circuit applied Moench's abuse of discretion standard[5] to allegations that the fiduciaries of Quantum Chemical Corporation's ("Quantum") ESOP breached their fiduciary duties by failing to diversify or liquidate ESOP shares following the sale of one of Quantum's more profitable divisions. 66 F.3d at 1450. As in Moench, the defendants contended that the terms of the plan did not give it any discretion to diversify or liquidate the ESOP funds. See id. The court held that Kuper had failed to present sufficient evidence to rebut the presumption that Quantum's fiduciaries had acted reasonably in failing to diversify or liquidate the participants' shares in the ESOP. See id. at 1460. The court reasoned that an adequate investigation by the ESOP would not have indicated that continuing to hold the Quantum stock was improvident.[6]
While the First Circuit has not considered this issue, this Court finds persuasive and therefore adopts the reasoning of the Third and Sixth Circuits that an ESOP fiduciary is entitled to a presumption that its decision to remain invested in employer securities was reasonable. Accordingly, in order to state a viable claim, Plaintiffs must plead facts that, if proven at trial, would establish that Textron and the Plan abused their discretion in failing to diversify Textron stock during the years 2000 and 2001. A review of the Complaint reveals that the Plaintiffs have not met this burden.
*280 Courts have held that an ESOP fiduciary's presumption of reasonableness may be overcome when a precipitous decline in the employer's stock is combined with evidence that the company is on the brink of collapse or undergoing serious mismanagement. Moench, 62 F.3d at 570; Kuper, 66 F.3d at 1460; Wright v. Oregon Metallurgical Corp., 222 F.Supp.2d 1224, 1233-34 (D.Or.2002). This is not one of those cases. The Plaintiffs allege a drop in the price of Textron common stock during the years 2000 and 2001 (which Textron does not dispute), a decline in corporate profits, and an ongoing restructuring of the company. However, these allegations alone, without more, are insufficient to rebut the presumption that Textron and the Plan acted reasonably in continuing to hold Textron stock. During the years 2000 and 2001 the value of Textron stock decreased, but at no time was Textron stock unsuitable for investment. For example, despite the decreased price of Textron stock at the end of 2001, the actual price of the stock fluctuated between $50 and $60 during the majority of 2000 and 2001. Complaint ¶¶ 39-40. Moreover, the other investment options provided by the Plan also experienced decreased values during 2000 and 2001.[7] It is common knowledge that the stock market suffered dramatic losses during 2000 and 2001, but the Plaintiffs fail to allege any facts that would indicate Textron or the Plan should have had reason to think the decline in the price of Textron stock was anything unusual or specifically related to Textron's viability as a company. In fact, Textron and the Plan arguably had fiduciary obligations to the ESOP's participants not to change the investment strategy. If Textron or the Plan had sold Textron common stock in an effort to diversify as the Plaintiffs claim they should have, they surely would have been sued when the stock later appreciated. See Kuper, 66 F.3d at 1459 ("`[I]n determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face hability for that caution, particularly if the employer's securities thrive.'") (citation omitted). Moreover, if the Defendants had embarked upon a strategy of dumping Textron stock that act in itself may well have triggered a broader sell-off resulting in a stock price decline. This too would no doubt have spurred litigation against the defendants.
This Court finds that Textron and the Plan did not breach their fiduciary duties to the Plaintiffs in violation of ERISA § 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a). Textron and the Plan's Motion to Dismiss Count III of the Plaintiffs Complaint must therefore be granted.

2. Putnam

The Plaintiffs also allege that Putnam, as the ESOP's trustee, violated its fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a), by purchasing shares of Textron common stock and then failing to sell the stock. Complaint ¶ 87. Putnam contends that it cannot be held liable under ERISA § 404(a) because it was not a fiduciary with respect to those activities. Putnam states that the Plaintiffs' claims must be dismissed because it is a "directed trustee" and not a fiduciary under 29 U.S.C. § 1103(a)(1).
*281 The key determinant of whether an entity is a fiduciary is if that entity exercised, or had the ability to exercise, discretionary authority over the administration of an ERISA-regulated plan. See Beddall, 137 F.3d at 18 (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 96 (1st Cir.1982)). Importantly, fiduciary status is "not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only `to the extent' that he possesses or exercises the requisite discretion and control." Id. (quoting 29 U.S.C. § 1002(21)(A)); Johnson v. Georgia-Pacific Corp., 19 F.3d 1184, 1188 (7th Cir.1994) (holding that an entity is only a fiduciary to the extent that it performs one of the described duties). In other words, the presence of discretionary authority over certain aspects of an ERISA-regulated plan does not create fiduciary obligations with respect to other aspects of the plan. In fact, ERISA specifically relieves a trustee, such as Putnam, from fiduciary obligations regarding the management and control of a plan's assets when the trustee is "directed" by the plan's designated fiduciary. 29 U.S.C. § 1103(a)(1).[8] Directed trustees, as a result, cannot be held liable for following the investment instructions provided by a plan's named fiduciaries. See Herman v. NationsBank Trust Co. (Georgia), 126 F.3d 1354, 1361 (11th Cir. 1997); Maniace v. Commerce Bank of Kansas City, N.A., 40 F.3d 264, 267 (8th Cir.1994).
Here, as the First Circuit did in Beddall, the Court begins its analysis of Putnam's status by looking at the Plan documents. 137 F.3d at 19. The Plaintiffs contend that Putnam is a fiduciary because Putnam had discretionary authority with respect to many aspects of the Plan. Specifically, the Plaintiffs refer the Court to several provisions in the Trust Agreement that provide for such discretion, beginning with § 5.
[T]he Trustee may hold assets of the Trust uninvested from time to time if and to the extent that it may deem such to be in the best interests of the Trust. Notwithstanding the foregoing ... all of the assets of the Trust shall be invested as the Administrator directs in investment products sponsored, underwritten or managed by affiliates of the Trustee[.]
Trust Agreement § 5. Second, Plaintiffs contend that the Trust Agreement provides Putnam with discretion when it comes to managing and protecting the Trust. "The Trustee is authorized and empowered to employ such agents, consultants, custodians, depositories, advisors, and legal counsel as may reasonably be necessary or desirable in the Trustee's judgment in managing and protecting the Trust ... and to pay them reasonable compensation out of the Trust." Trust Agreement § 10(k). Finally, Plaintiffs contend that § 10(n) of the Trust Agreement provides for a substantial reservation of power in favor of Putnam: "The Trustee is authorized to do all other acts in its judgment necessary or desirable for the proper administration of the Trust in accordance with the provisions of the Plan and this Agreement[.]"
Putnam, however, counters that any general discretion it might have had with respect to the investment of the Plan's fundsthe responsibility that the Plaintiff's *282 allegations revolve aroundwas trumped by specific provisions of the Plan. Putnam refers the Court to a number of Plan provisions in support of its argument. First, the Plan provides that the Plan Administrator, not Putnam, has sole discretion with respect to maintenance of the Plan's assets.
The Plan administrator has the authority to direct the Trustee to maintain the assets of the trust fund in multiple investment funds .... Such investment funds will be established from time to time by the Plan administrator, which will have sole discretion to determine the number and character of such funds.... The Plan administrator, in its sole discretion, has the authority to establish additional investment funds ... and to close, limit or eliminate the availability of any of the investment funds ....
Plan Document § 8.01(a), Ex. 33 (emphasis added). Second, Putnam refers the Court to § 6 of the Trust Agreement, which provides that "the Trustee shall transfer to each such Investment Fund such portion of the assets of the Trust as the Administrator or Plan members direct in accordance with the specific provisions of the Plan and in the manner provided in the Service Agreement." Trust Agreement § 6 (emphasis added). These provisions, Putnam contends, make clear that it was merely acting as a directed trustee without the discretion to determine how Textron stock could be invested. Accordingly, it did not owe the Plaintiffs any fiduciary obligations under ERISA.
While Plaintiffs refer the Court to several provisions in the Plan documents in support of their contention that Putnam had discretion in the investment of the ESOP's funds, discussed infra, those provisions are not directly relevant to the inquiry in this case. In plain language, the provisions that the Plaintiffs rely upon essentially provide that Putnam may, for example, hold assets for short periods of time to facilitate the investment directions of the Plan Administrator. In so holding the funds, Putnam has a fiduciary obligation to the Plan. This is a far cry from what the Plaintiffs believe Putnam should have done. Plaintiffs contend that Putnam should have overridden or vetoed the directions of the Plan Administrator to invest in Textron stock, and reinvested those assets already invested in Textron stock. Nothing in the Plan can be reasonably read to give Putnam this authority. Moreover, the suggestion that a directed trustee should act in this way turns the relationship between the Plan and the Trustee on its head. If Putnam had done what the Plaintiffs suggest it would have been fired and sued by the Plan. Putnam may be a fiduciary of the Plaintiffs with respect to certain limited aspects of their relationship, but that does not make Putnam a fiduciary for all aspects of the relationship. See Beddall, 137 F.3d at 18; FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 913-14 (8th Cir.1994) (holding that ERISA trustee was only obligated to comply with direction that did not violate terms of trust). Both the Plan Document and the Trust Agreement specify that Putnam was a directed trustee with respect to the investment of the ESOP's funds in the Stock Fund. Therefore, Putnam cannot be held to a fiduciary standard with respect to that conduct. Putnam's Motion to Dismiss with respect to Count III of the Plaintiffs' Complaint must therefore be granted.

B. Self-Dealing Prohibitions Under ERISA

Count I of the Complaint alleges that the Defendants engaged in self-dealing, prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b). ERISA section 406(b) provides that a fiduciary shall not:
(1) deal with the assets of the plan in his own interest or for his own account,

*283 (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.
Count I alleges that the Defendants violated the prohibited transactions provision of ERISA § 406(b) by "purchasing and/or allowing participant's [sic] to purchase Textron stock for defendants' own reasons rather than solely and exclusively for the benefit of the plans and plaintiffs and the participants and beneficiaries of the Plans... by [flailing to allow participants to sell Textron stock[.]" Complaint at ¶ 71.

1. Textron and the Plan

In support of their Motion to Dismiss, Textron and the Plan contend there is no authority to support the proposition that an employer may violate ERISA § 406(b) by requiring its ESOP participants to invest in its stock. This writer agrees with this assessment. ESOPs, by their very nature, are intended to encourage employee ownership in the employer company. Kuper, 66 F.3d at 1458. As a result, ESOPs are traditionally exempted "from ERISA's `strict prohibitions against self-dealing,' that is `deal[ing] with the assets of the plan in his own interest or for his own account.'" Id. (quoting Martin, 965 F.2d at 665) (quoting 29 U.S.C. § 1106(b)(1)). See Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir.1982) (dismissing self-dealing allegations because the employer's interests were not adverse to the ESOP's). In light of the purpose of ESOPs, Plaintiffs' allegations regarding the conduct of Textron and the Plan's purchase of Textron stock do not add up to a violation of 29 U.S.C. § 1106(b). Accordingly, Textron and the Plan's Motion to Dismiss Count I of the Complaint is granted.

2. Putnam

In support of its Motion to Dismiss, Putnam contends that it cannot be held liable under 29 U.S.C. § 1106(b) because it did not act as a fiduciary with respect to the transactions at issue. ERISA requires that "a fiduciary shall not" engage in prohibited self-dealing transactions. 29 U.S.C. § 1106(b) (emphasis added). Since this Court has already held that Putnam was not a fiduciary with respect to the ESOP's choice of investments, it is selfevident that Putnam cannot be liable for self-dealing under 29 U.S.C. § 1106(b). Therefore, Putnam's Motion to Dismiss with respect to Count I of the Complaint should be granted.

C. Anti-Inurement Prohibitions Under ERISA

Count II of the Complaint alleges that the Defendants violated the anti-inurement provision of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1). ERISA § 403(c)(1) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The Plaintiffs allege that the Defendants benefitted from "[p]urchasing and/or allowing participant's [sic] to purchase Textron stock for defendants' own reasons rather than solely for the benefit of the Plans and plaintiffs and participants and beneficiaries of the Plans[.]" Complaint at ¶ 79.
While the assets of an ERISAregulated plan may never inure to the *284 benefit of an employer, § 403(c)(1) does not prevent an employer from enjoying indirect benefits associated with plan investment decisions. See Holliday v. Xerox Corp., 732 F.2d 548, 551 (6th Cir. 1984) (holding that § 403(c)(1) does not prohibit incidental benefits that inure to an employer when the overall purpose of the underlying plan was to benefit the employees). In fact, employers often receive incidental benefits attendant to the operation of an employee pension plan. See Spink v. Lockheed Corp., 125 F.3d 1257, 1260-61 (9th Cir.1997) (holding that it is permissible for employers to receive incidental benefits from an employee pension plan such as attracting and retaining employees, paying deferred compensation, settling or avoiding strikes, providing increased compensation without increasing wages, reducing the likelihood of lawsuits by encouraging employees who would otherwise have been laid off to depart voluntarily, and obtaining waivers of employment-related claims) (citing Lockheed Corp. v. Spink, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996)). Incidental benefits to a sponsoring employer are also apparent in the context of ESOP plans. See Martin, 965 F.2d at 664 (noting that ESOP plans are a useful tool of corporate finance in addition to an employee retirement system); Baggett v. Woodbury, 1987 WL 383796, at *12 (N.D.Fla. Jan. 16, 1987) (holding that ESOP assets may indirectly benefit an employer without violating § 403(c)(1)).
The Plaintiffs contend that because of the restructuring and the decline in Textron stock during 2000 and 2001 the benefits that inured to the Defendants were more than incidental. Plaintiffs' Opposition to Defendants' Motion to Dismiss at 29. In other words, the Plaintiffs argue that because the value of Textron stock decreased during 2000 and 2001, their employer was receiving a disproportionate benefit from the employees' participation in the ESOP. This writer disagrees. Despite the drop in the value of Textron stock, participants in the Plan still received the opportunity to invest for long-term, tax-deferred growth for retirement, matching employer contributions, and the ability to participate in the ownership of their employer. ERISA § 403(c)(1) is not offended because the advantages to the Plaintiffs of investing in the Plan in 2000 and 2001 were diminished in comparison to previous years, while the benefits Textron and the Plan received from employee contribution to the ESOP did not correspondingly decline during those years.[9] Therefore, the Defendants' Motions to Dismiss Count II of the Plaintiffs' Complaint should be granted.

D. ERISA § 405

Count IV of the Plaintiffs' Complaint alleges that the Defendants participated knowingly in other fiduciaries' breaches in violation of ERISA § 405, 29 U.S.C. § 1105. Complaint ¶¶ 91-98. Sec. tion 405 provides, in pertinent part:
In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
(2) if, by his failure to comply with section 1104(a)(1) of this title in the *285 administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.
29 U.S.C. § 1105(a)(1)-(3). Section 405 does not create fiduciary duties in addition to those already created by law. Therefore, liability under § 405 is wholly dependent upon the fiduciary status of the defendants. See Maniace v. Commerce Bank of Kansas City, N.A., 40 F.3d 264, 268 (8th Cir.1994) (holding that in order to maintain a claim under § 405 a plaintiff must establish that a defendant breached fiduciary obligations); Donovan v. Walton, 609 F.Supp. 1221, 1248 (S.D.Fla.1985). Since this Court already has determined that Putnam is not a fiduciary of the Plaintiffs with respect to the allegations in this case, the Plaintiffs cannot maintain a separate claim against the Defendants under § 405. The Defendants' Motions to Dismiss Count IV of the Complaint are granted.

IV. Conclusion

Based on the reasons stated above, Defendants Textron, Inc., Textron Savings Plan, and Textron Savings Plan Committee's Motion to Dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED. Additionally, Defendant Putnam Fiduciary Trust Company's Motion to Dismiss the Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is also GRANTED.
IT IS SO ORDERED.
NOTES
[1] Three documents govern the relations among Textron, Putnam, and the Plan participants: (1) the 1999 Amended and Restated Plan Document ("Plan Document"), which sets forth the investment details of the Plan; (2) the Textron Savings Plan Trust Agreement ("Trust Agreement"), which provides Putnam's obligations and duties as trustee of the Plan; and (3) the Textron Savings Plan Service Agreement ("Service Agreement"), which sets out the specific services that Putnam will provide the Plan as its trustee.
[2] The Internal Revenue Code defines an ESOP as

a defined contribution plan
(A) which is a stock bonus plan which is qualified, or a stock bonus and a money purchase plan both of which are qualified under section 401(a), and which are designed to invest primarily in qualifying employer securities; and
(B) which is otherwise defined in regulations prescribed by the Secretary.
26 U.S.C. § 4975(e)(7).
[3] According to the Service Agreement, other funds available to Plan participants are the George Putnam Fund, Putnam Voyager Fund, One Group Bond Fund, Putnam International Growth Fund, Putnam S & P 500 Index Fund, Putnam Stable Value Fund, and Putnam Money Market Fund.
[4] Despite the extensive arguments provided by the parties regarding the fiduciary status of Textron and the Plan, this Court cannot reach such an issue on a motion to dismiss pursuant to Rule 12(b)(6). The strictures of the Rule 12(b)(6) standard limit this Court to Plaintiffs' factual allegations, and it must evaluate those allegations in the light most favorable to them. The fiduciary status of an entity in the ERISA context is highly fact specific. See Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 275 (3d Cir.2001); Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1461 (9th Cir.1995); In re Fruehauf Trailer Corp., 250 B.R. 168, 204 (D.Del. 2000). As a result, this Court cannot reach this fact intensive issue on a motion to dismiss.
[5] In adopting the abuse of discretion standard, the court held:

We agree with and adopt the Third Circuit's holding that a proper balance between the purpose of ERISA and the nature of ESOPs requires that we review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable. A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision.
Kuper, 66 F.3d at 1459.
[6] For example, the court noted that Quantum stock closed at or above the previous day's trading price on 181 of the 402 trading days during the period at issue. The court also noted that the price of Quantum stock "fluctuated significantly during this period." Id. at 1460. Finally, the court noted that "several investment advisors recommended holding Quantum stock" during that period. Id.
[7] The Putnam Voyager Fund lost 17% of its value during 2000, and 22% of its value during 2001. The Putnam International Growth Fund lost 9% of its value during 2000, and 20% of its value during 2001. The Putnam S & P 500 Index Fund lost 9% of its value during 2000, and 12% of its value during 2001. See App. F, April 2002 Notice to Participants in Textron Savings Plan.
[8] ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1), provides that a trustee is relieved of fiduciary responsibility for the management and control of plan assets where:

the plan expressly provides that the trustee [is] subject to the directionfs] of a named fiduciary who is not a trustee, in which case the trustee[] shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to [ERISA]....
[9] Count II also alleges that Putnam violated § 403(c)(1). However, as with the self-dealing claim, Putnam lacked discretion with respect to investment decisions. It is not a fiduciary and cannot be held liable under § 403(c)(1).