## In re SPRINT CORPORATION ERISA LITIGATION

No. 03–2202–JWL.

United States District Court, D. Kansas.

May 27, 2004.

See, also, 2004 WL 2182186.

Diane A. Nygaard, The Nygaard Law Firm, Leawood, KS, Robert A. Izard, Jr., Wayne T. Boulton, Schatz & Nobel, PC, Hartford, CT, for Plaintiffs.

Howard Shapiro, Robert Rachal, Stacey C.S. Cerrone, Shook, Hardy & Bacon, LLP, New Orleans, LA, Clayton L. Barker, Mark A. Thornhill, Spencer Fane Britt & Browne, Charles W. German, David J. Rempel, Rouse Hendricks German May PC, Richard N. Bien, Robyn Lyn Turner, Lathrop & Gage, Kansas City, MO, Timothy M. O'Brien, Shook, Hardy & Bacon L.L.P., Overland Park, KS, James M Webster, III, Mark C. Hansen, Kellogg, Huber, Hansen, Todd & Evans, Gary S. Tell,

Robert N. Eccles, O'Melveny & Myers, LLP, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This is a putative class action involving claims of alleged breach of fiduciary duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1000–1461 ("ERISA"). Plaintiffs assert claims as participants in and on behalf of three different retirement savings plans against defendants Sprint Corporation, committees that participated in administering the plans and individual members of those committees, the individual members of Sprint's board of directors (collectively, the "Sprint defendants"), and the third-party trustee for the plans, Fidelity Management Trust Company ("Fidelity").

The matter is presently before the court on defendants' motions to dismiss (docs. 51 & 53). For the reasons explained below, the court will grant in part and deny in part defendants' motions to dismiss plaintiffs' claims. Specifically, the court will dismiss plaintiffs' imprudent investment claim insofar as it alleges defendants should have amended the plans to reduce or eliminate investments in Sprint stock, plaintiffs' imprudent investment and disclosure claims against the director defendants, and plaintiffs' co-fiduciary liability claims against the director defendants and Fidelity. Defendants' motions to dismiss will otherwise be denied.

### II. Factual Background

#### A. Nature of the Parties and the Case

Plaintiffs Robert K. Fries, Fran Lindholm, Anton P. Spanier, LaVonne M. Easter, and Jeffrey M. Snethen have brought these consolidated cases as participants in and on behalf of the Sprint Re-

tirement Savings Plan (the "Savings Plan"), the Sprint Retirement Savings Plan for Bargaining Unit Employees (the "Savings Plan for BUE"), and the Centel Retirement Savings Plan for Bargaining Unit Employees ("Centel Plan"), together with their predecessor plans (collectively, the "plans"). This lawsuit arises from the plans' investment in the Sprint FON Stock Fund, the Sprint PCS Stock Fund, the TRASOP Sprint Stock Fund, the TRASOP Sprint PCS Stock Fund, the Sprint FON CESOP Fund and/or the Sprint PCS CE-SOP Stock Fund (collectively, "Sprint stock"). Plaintiffs allege the plans invested over 60% of their assets in Sprint stock while the stock deteriorated into a "speculative, high-risk investment[ ]."

Plaintiffs allege defendants breached their fiduciary duties in the manner in which they administered the plans. Defendants include Sprint Corporation, which is the administrator of the plans; Sprint Investment Trusts Committee, Sprint Pension and Savings Trusts Committee, Sprint Savings Plans Committee, Sprint Employee Benefits Committee, Sprint Investment Committee, and Sprint Savings and Retirement Plans Committee, which are committees comprised of Sprint employees that participated in administering the plans (collectively, the "committee defendants"); Gene M. Betts, I. Benjamin Watson, Randall T. Parker, J. Richard Devlin, Robert Dellinger, and M. Jeannine Strandjord, who are or were high and/or senior level Sprint employees who served as individual members of one or more of the committee defendants (collectively, the "individual members of the committee defendants"); William T. Esrey, Ronald T. Le-May, Arthur B. Krause, John P. Meyer, Dubose Ausley, Warren L. Batts, Michel Bon, Ruth M. Davis, Irvine O. Hockaday, Jr., Linda Koch Lorimer, Charles E. Rice, Ron Sommer, Stewart Turley, Harold S. Hook, and Louis W. Smith, who are or were members of Sprint's board of directors (collectively, the "director defendants"); and Fidelity, which is the third-party trustee for the plans.

The plans are 401(k) defined contribution plans that allow participants to direct the plans to purchase investments from among the investment options selected by the fiduciaries, and those investments are then allocated to participants' individual accounts. The plans provide participants with several investment options, one of which is the "Company Stock Fund." The plans also provide for matching contributions by Sprint. Under the Savings Plan and the Savings Plan for BUE, these employer contributions are held in a separate employer contribution account that is invested in the Company Stock Fund. Under the Centel Plan, the employer contributions are invested in the same manner as the participant's designation for his or her own contributions.

Plaintiffs' complaint alleges Sprint was a fiduciary insofar as it was the administrator of the plans; it was responsible for disseminating to participants the summary plan descriptions ("SPDs") and prospectuses; it exercised discretion over SPDs and prospectuses; its employees served on the various committee defendants; its board of directors is an agent of the corporation; and it made direct representations to participants regarding the plans. The various committees and their members were fiduciaries insofar as the committees were designated as administrators and named fiduciaries of the plans; they had various investment responsibilities such as determining the objectives, policies, and guidelines for investments (including Sprint stock), determining the suitability of acquiring and holding Sprint stock, investigating investment options, and eliciting information from Sprint to permit participants to make proper investment decisions; they were responsible for

disseminating SPDs and prospectuses to participants; and they had authority to direct the trustee with respect to investment options. The director defendants were fiduciaries insofar as they were responsible for appointing and removing members of the committees; ensuring the committee members were properly performing their duties with respect to selecting investment options and investing assets; and conveying information necessary for the committee members to perform their duties. In addition, Mr. Esrey was a fiduciary insofar as he made direct representations to participants. Fidelity was a fiduciary insofar as it had exclusive authority to manage and control the assets of the plans (except to the extent that it was directed to invest all or a portion of the assets), and it was also to investigate the advisability of investing in Sprint stock in compliance with the terms of the plans and ERISA.

Plaintiffs' complaint also alleges that all of the defendants are liable as co-fiduciaries pursuant to ERISA § 405, 29 U.S.C. § 1105. Also, liability for imprudent investments was not shifted to participants pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), because defendants failed to comply with § 404(c) by declaring the plans were 404(c) plans, by negligently failing to disclose all material information, and by failing to provide an adequate description of the Company Stock Fund investment objectives and risk and return characteristics. Further, the act of designating investment alternatives is a fiduciary function regardless of a plan's purported § 404(c) status.

## B. Plaintiffs' Claims

Plaintiffs assert three claims against defendants: (1) an imprudent investment claim; (2) a disclosure claim; and (3) an appointment claim.

### 1. Claim I: Imprudent Investment Claim

Claim I alleges that Sprint stock was an imprudent investment, and that all defendants breached their fiduciary duties by allowing the plans to purchase and hold shares of Sprint stock and by allowing Sprint stock to remain an investment option under the plans. Plaintiffs base this allegation on both public and nonpublic information.

Publicly available information reflects that in approximately June of 1998, in response to fierce competition and declining profits in the long-distance industry, Sprint announced plans to incur costs of $2 billion to develop a new Internet system called the "Integrated On–Demand Network" ("ION"). In order to attempt to withstand the high development costs of ION and the declining profitability of the long-distance business, in October of 1999 Sprint announced plans to merge with rival WorldCom in a stock exchange valued at $129 billion. In July of 2000, Sprint announced that it was terminating the planned merger because it could not obtain regulatory approval. In August of 2000, Sprint announced that it intended to remain independent and pursue high-growth/ high-risk opportunities because of its weak telephone business. Sprint began a marketing program, eventually referred to as "Clear Pay," that targeted poor credit customers for wireless service. In October of 2001, Sprint announced that it was abandoning the ION project, and effectively admitted that one of the project's foundations was a failure. Meanwhile, Sprint tightened the terms of its Clear Pay program, but the program continued to deteriorate and Sprint became overly dependent on poor credit subscribers. During all of this, credit rating agencies gradually and continually cut the ratings on Sprint stock. By June of 2002, Moody's Investor

Service had cut Sprint's credit rating to the last level above "junk" status and Standard & Poor's had cut Sprint's debt to the lowest investment grade.

Plaintiffs allege that, meanwhile, defendants knew additional material nonpublic information. The Sprint defendants made numerous public misrepresentations that effectively stated that the WorldCom merger would likely be approved, but they knew this was false as early as April of 2000 based on meetings and communications with Sprint and the Department of Justice, the FCC, and the European Commission. Also, Mssrs. Esrey and LeMay engaged in high-risk, aggressive, and arguably inappropriate tax shelters developed by Sprint's auditor, Ernst & Young, to avoid paying taxes on hundreds of millions of dollars of profits related to their stock options while simultaneously making Sprint's financial performance look better. The IRS was increasingly vocal about the illegality of such tax shelters. Plaintiffs' complaint alleges that by the middle of 2002, defendants should have known and negligently failed to disclose that the significant conflicts of interest created by these tax shelters could lead to the departure of Mssrs. Esrey and LeMay from Sprint under circumstances that would cause a substantial drop in the value of Sprint stock.

Based on this public information as well as this nonpublic information, plaintiffs contend defendants should have known that Sprint stock was not a prudent investment. As a result, they should have minimized the plans' investment in Sprint stock by terminating Sprint stock as an investment option, halting the plans' purchase of Sprint stock, and selling all of the Sprint stock held by the plans. By not doing so, they breached their fiduciary duties to plaintiffs.

## 2. Claim II: Disclosure Claim

Plaintiffs assert Claim II against the Sprint defendants only, not Fidelity. In this claim, plaintiffs allege that the Sprint defendants negligently misrepresented and failed to disclose material information to participants concerning the plans' investment options in Sprint stock. The Sprint defendants provided participants with the following risk characteristics regarding Sprint stock: (1) the actual performance of the Sprint FON stock fund and the Sprint PCS common stock may vary slightly because "the [Company Stock] Fund holds a small percentage of its assets in cash for purposes of liquidity"; (2) the Savings Plan SPD explained that because the Company Stock Funds "invest principally in Sprint FON stock and Sprint PCS stock, the funds are generally considered riskier, and may vary in price more than a diversified portfolio invested in many accounts"; and (3) an attachment to the Centel Plan stated that investing in a non-diversified single stock is riskier than investing in a diversified fund. In addition, the September 1998 edition of Sprint's monthly newsletter cited Mr. LeMay as representing that "[i]f Sprint seizes the advantage of becoming One Sprint, growth to $40 billion-plus in revenues, a market capitalization of $60 billion and a stock price of $140 can be realized in five years." The newsletter also quoted Mr. Esrey as stating that "[i]n the next five years with Sprint PCS and Sprint ION, we can create more value than exists in our current core business of local and long distance."

Plaintiffs contend the Sprint defendants breached their fiduciary duties by not disclosing the anticipated failure of the WorldCom merger. Plaintiffs further allege that defendants made affirmative misrepresentations in Sprint's public filings with the SEC, which were incorporated into the SPDs and prospectuses, stating

the WorldCom merger was expected to close when in fact the Sprint defendants knew or should have known that the merger was not going to be approved by government regulators. Specifically, Sprint filed numerous forms with the SEC stating "[t]he companies anticipate that the merger will close in the second half of 2000." The last of these was a Form 10–Q filed on May 11, 2000. Also, the Sprint defendants negligently failed to disclose the conflicts of interest that arose by virtue of the tax shelters that resulted in the termination of Sprint's top two employees, Mssrs. Esrey and LeMay.

### 3. Claim III: Appointment Claim

Plaintiffs assert Claim III against Sprint and the director defendants for failing to monitor the committee defendants, the individual members of the committee defendants, and the trustee, and by providing negligently misleading information and failing to disclose this information pertaining to Sprint's financial condition, business prospects, and conflicts of interest. Sprint and the director defendants breached their fiduciary duties to appoint and monitor committee members by appointing committee members who lacked the independence necessary to make appropriate decisions and who lacked the knowledge and experience to perform their fiduciary responsibilities and by failing to inform the committee members concerning the imprudence of Sprint stock as an investment. Sprint and the director defendants also breached their fiduciary duties by failing to adequately monitor the

plans' investments in Sprint stock and failing to provide an adequate description of the investment objectives and risk and return characteristics of each investment option under the plans. Sprint and the director defendants should have known Sprint stock was an imprudent investment and should have required the committee defendants to take steps necessary to protect the plans against massive losses.[1]

### C. Defendants' Motions to Dismiss

The Sprint defendants now ask the court to dismiss plaintiffs' claims against them on the following grounds: (1) the imprudent investment claim (Claim I) fails to plead an impending collapse of Sprint that would trigger a duty to override plan terms on investments in Sprint stock; (2) the disclosure claim (Claim II) is premised on a mistake of law insofar as it attempts to attach ERISA fiduciary duties to SEC filings made and disseminated pursuant to the securities laws in a corporate, not ERISA, fiduciary capacity; (3) the disclosure claim also fails to state a claim against Mssrs. Esrey and LeMay for affirmative fiduciary misrepresentations; (4) the imprudent investment and disclosure claims fail against the director defendants for the additional reason that they are not responsible for plan investments or disclosures; (5) the appointment claim (Claim III) should be dismissed as to the director defendants because it alleges duties that do not exist, and fails to state a claim on the one duty that does exist (i.e., the duty of appointment) because the complaint af-

---

1. Plaintiffs' complaint also asserts a fourth claim for breach of fiduciary duty based on alleged self-dealing associated with the proposed settlement of *Sprint Corporation Securities Litigation,* in this court. The Sprint defendants' memorandum in support of their motion to dismiss states that this claim "has been mooted" by an agreed stipulation excluding any ERISA claims from the settle-

ment. The Sprint defendants, however, have not moved to dismiss this fourth claim. Because it appears that this claim should no longer be lingering in the case, the court hereby orders plaintiffs on or before June 18, 2004, to either show cause why this fourth claim should not be dismissed or, alternatively, file a motion for leave to amend their complaint to abandon this claim.

firmatively alleges the appointed plan committee members were qualified based on their knowledge and position as the senior financial, legal, and human resource officers of Sprint; and (6) all of plaintiffs' claims fail because ERISA § 404(c) precludes breach of fiduciary duty claims for participant-directed investments.

Fidelity asks the court to dismiss plaintiffs' imprudent investment claim against it. Fidelity contends it is a directed trustee that did not exercise discretion under the plans, hence ERISA's directed trustee provision precludes liability against Fidelity. Fidelity further contends that plaintiffs' complaint fails to state a claim against it for co-fiduciary liability.

### III. Legal Standard for a Motion to Dismiss

 The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quotation omitted).

 It is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss. *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir.2001). If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Id.* However, it is "accepted practice that, 'if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claims, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'" *Id.* (quoting *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir.1997)). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* (quoting *GFF Corp.*, 130 F.3d at 1385).

Here, defendants have submitted a variety of documents referenced in plaintiffs' complaint such as the plan documents and the Sprint/Fidelity trust agreement. Plaintiffs do not dispute the authenticity of these documents, and therefore the court will consider their content, to the extent relevant, in resolving defendants' motions to dismiss. *See, e.g., Rankin v. Rots*, 278 F.Supp.2d 853, 857 n. 8 (E.D.Mich.2003) (considering plan and trust documents that were referenced in the complaint in resolving motion to dismiss); *Stein v. Smith*, 270 F.Supp.2d 157, 163 n. 2 (D.Mass.2003) (same); *In re Duke Energy ERISA Litig.*, 281 F.Supp.2d 786, 789 n. 3 (W.D.N.C. 2003) (same; plan document).

### IV. Analysis

The court will largely deny defendants' motions to dismiss. Specifically, the court will deny all aspects of the motions except that it will dismiss plaintiffs' imprudent investment claim insofar as it alleges defendants should have amended the plans to

reduce or eliminate investments in Sprint stock, plaintiffs' imprudent investment and disclosure claims against the director defendants, and plaintiffs' co-fiduciary liability claims against the director defendants and Fidelity. The court finds that plaintiffs have otherwise stated a claim sufficient to withstand defendants' arguments that their claims should be dismissed.

## A. The Sprint Defendants' Motion to Dismiss

### 1. Claim I: Imprudent Investment Claim

The Sprint defendants raise essentially three arguments with respect to plaintiffs' imprudent investment claim. First, they contend that Sprint was acting in its capacity as plan settlor, not as fiduciary, when it made the Company Stock Fund a mandatory investment option under the plans. Second, absent an impending collapse of the company (which is not alleged here), fiduciaries must follow, not override, plan terms requiring investments in employer stock. Third, defendants contend that the court should apply the so-called "ESOP presumption" of prudence because these were eligible individual account plans invested in company stock.

In response, plaintiffs clarify that their complaint alleges defendants breached their fiduciary duty to act with prudence in two ways: (1) by allowing the plans to offer Sprint stock as investment options; and (2) by allowing the plans to purchase and hold shares of Sprint stock when it was imprudent to do so. Plaintiffs point out that the only required investment in the Company Stock Fund was the employer contribution portion of the Savings Plan and Savings Plan for BUE; otherwise, the plans only required that Sprint stock be offered as an investment option with re-

spect to the employee contribution portions and the employer contribution portion of the Centel Plan. Plaintiffs contend that even if the Company Stock Fund was a mandatory investment option, defendants were not required to invest that fund so significantly in Sprint stock. Further, even if investment in Company Stock Funds and Sprint stock was required, defendants in fact had a duty to disregard the plan terms because abiding by them violated ERISA notwithstanding the absence of an allegation of Sprint's impending collapse. Plaintiffs further contend that the plans were not ESOPs, and hence the ESOP presumption does not apply, particularly at the motion to dismiss stage.

The court will examine the parties' arguments in essentially two phases. First, the court will examine what was required by the express terms of the plans themselves. Based on this determination, the court will ascertain the degree of discretion, if any, possessed by the Sprint defendants and the corresponding extent of their fiduciary duties. *See* 29 U.S.C. § 1002(21)(A) (providing a person is a fiduciary with respect to an ERISA plan only "to the extent" that he or she exercises discretionary authority, control, or responsibility for administering or managing the plan or its assets). Second, the court will examine whether plaintiffs' allegations are sufficient to suggest that the Sprint defendants had a fiduciary duty to override plan terms.

#### a. The Express Terms of the Plans

■ Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).[2] "The phrase 'to the ex-

---

2. ERISA defines "person" to include business entities such as corporations. 29 U.S.C. § 1002(9).

tent' indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters.*, 793 F.2d 1456, 1459–60 (5th Cir. 1986). Thus, ERISA defines the term fiduciary in *"functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person ... adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

■ In this case, the plans mandated that the Company Stock Fund be offered as an investment option with respect to the employee contribution aspect of the plans and the corresponding employer contribution aspect of the Centel Plan. They further required that the employer contribution aspects of the Savings Plan and Savings Plan for BUE be invested in the Company Stock Fund. Under ERISA, "[a]n employer can wear two hats: one as a fiduciary administering a ... plan and the other as the drafter of a plan's terms." *Averhart v. U.S. WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1488 (10th Cir.1994) (quotation omitted). But a fiduciary with two hats must "wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225, 120 S.Ct. 2143. When employers adopt, modify, or terminate welfare plans, they do not act as fiduciaries. *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *see also Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (observing that amending a plan

is beyond the power of a plan administrator, and therefore it cannot be an act of plan management or administration). Instead, they are "analogous to the settlors of a trust," *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996), and may act freely without regard to fiduciary constraints, *Curtiss–Wright Corp.*, 514 U.S. at 78, 115 S.Ct. 1223 ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").

■ Here, the extent to which plaintiffs allege the defendants breached their fiduciary duties by not amending the plans to eliminate the Company Stock Fund as an investment option and to prevent the employer contribution aspects of the Savings Plan and Savings Plan for BUE from investing in Sprint stock is unclear. Plaintiffs do, however, allege defendants breached their fiduciary duties by not reducing or eliminating the plans' investment in Sprint stock, and amending the plan documents would have been one way to accomplish this. To the extent that plaintiffs' claim can fairly be read to suggest that defendants should have amended the plan documents, that aspect of plaintiffs' imprudent investment claim is dismissed. Defendants were free to amend the terms of the plans, or not, in their capacity akin to that of a settlor of a trust, not in their fiduciary capacity. Plaintiffs cannot prove any set of facts that would entitle them to relief on this theory. Accordingly, plaintiffs' imprudent investment claim is dismissed to the extent it alleges the Sprint defendants should have amended the express terms of the plans to reduce or eliminate investments in Sprint stock. *See, e.g., Lockheed Corp.*, 517 U.S. at 887, 116 S.Ct. 1783 ("Nothing in ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate

what kind of benefits employers must provide if they choose to have such a plan.").[3]

Plaintiffs' complaint, however, states a claim that defendants were acting in their fiduciary capacities by allowing the Company Stock Fund to invest so heavily in Sprint stock. The Savings Plan and the Savings Plan for BUE (which refers to the definition set forth in the Savings Plan) define the Company Stock Fund as being invested *"primarily* in Company Stock[4] but also may be invested in savings accounts, certificates of deposit, high grade short-term securities or cash" (emphasis added). The Company Stock Fund is comprised of two subfunds: (1) the FON Stock Sub-fund that is invested *primarily* in FON stock; and (2) the PCS Stock Sub-fund that is invested *primarily* in "Series 1" PCS stock. The Centel Plan defines Company Stock Fund as a fund that invests in Common Stock. The Company Stock Fund under the Centel Plan is similarly comprised of two subfunds: (1) the FON Stock Sub-fund that is invested *primarily* in FON stock; and (2) the PCS Stock Sub-fund that is invested *primarily* in Series 1 PCS stock. This language allowed for some discretion regarding the extent to which the Company Stock Fund was invested in Sprint stock. Therefore, plaintiffs' complaint adequately alleges that defendants were acting in their fiduciary capacities insofar as they determined the extent to which the Company Stock Fund was invested in Sprint stock. *See, e.g., In re Enron Corp. Sec., Derivative &*

*ERISA Lit.,* 284 F.Supp.2d 511, 669 (S.D.Tex.2003) (holding plaintiffs stated a claim for breach of fiduciary duty where Enron failed to diversify the plan because the plan documents used the word "primarily" and hence provided the plan fiduciaries with "considerable discretion").

The Sprint defendants contend the Company Stock Fund is a unitized fund that must have liquidity to efficiently handle the directed trustee's transactions in stock, hence the term "primarily" is defined in terms of the Company Stock Fund's liquidity. This liquidity theory, however, is unsupported by the language of the plan documents. The only provision cited by the Sprint defendants in support of their liquidity theory is a provision in the twenty-fourth amendment to the Sprint/Fidelity trust agreement which states that the Company Stock Funds shall consist primarily of shares of Sprint stock and "cash or short-term liquid investments ... in amounts designed to satisfy daily participant exchange or withdrawal requests." Thus, the trust agreement, not the *plans,* mandated that the Company Stock Funds invest solely in Sprint stock subject only to liquidity requirements. The plans themselves did not require that the Company Stock Fund be invested solely in Sprint stock subject only to liquidity requirements. This mandate in the trust agreement was presumably a directive of (one or more of) the Sprint defendants in carrying out the plan provision to invest the Compa-

---

**3.** In plaintiffs' memorandum in opposition to the Sprint defendants' motion, they request that if the court grants any part of the motion, that the order of dismissal be without prejudice and with leave to amend under Fed. R.Civ.P. 15(a). That request is denied insofar as it pertains to this aspect of plaintiffs' imprudent investment claim because the court cannot envision any factual scenario that would entitle plaintiffs to relief on this theory. Accordingly, this aspect of plaintiffs' impru-

dent investment claim is dismissed with prejudice.

**4.** The parties do not make much of the definition of Company Stock, but appear to agree that it is essentially synonymous for practical purposes with the Sprint stock at issue. The court is not inclined to speculate about what appears to be a non-issue, and therefore it will regard the term Company Stock, as defined by each of the plans, as referring to the Sprint stock at issue here.

ny Stock Fund "primarily" in Sprint stock. In other words, it was the Sprint defendants exercising their discretionary authority—that is, acting in their fiduciary capacity—to prescribe the extent to which the Company Stock Fund would be invested "primarily" in Sprint stock. The Sprint defendants could arguably have required a lesser investment in Sprint stock and still complied with the plans' invested-primarily-in-Sprint-stock requirement. Thus, because the Sprint defendants were exercising their discretionary authority under the plans to direct the trustee with respect to the degree that the Company Stock Funds were to be invested primarily in Sprint stock, they were acting in their fiduciary capacity in handing down this mandate.

The court cannot say, then, that plaintiffs can prove no set of facts that would entitle them to relief on this theory. Plaintiffs have adequately alleged that the Sprint defendants were acting in their fiduciary capacity in determining the extent to which the Company Stock Fund was to be invested in Sprint stock. Further, plaintiffs' complaint alleges that over 60% of the Company Stock Fund was invested in Sprint stock, notwithstanding its alleged plummeting worth. Accordingly, defendants' motion to dismiss this aspect of Claim I is denied.[5]

### b. Duty to Override the Express Terms of the Plans

Of course, the allegations in plaintiffs' complaint go much further than merely suggesting that defendants should have exercised their discretion to minimize the percentage of the Company Stock Fund that was invested in Sprint stock. More broadly, the complaint alleges defendants breached their fiduciary duties by allowing the Company Stock Fund to remain an investment option under the plans at all and by allowing the plans to purchase and hold any shares of Sprint stock. This aspect of plaintiffs' imprudent investment claim would have required defendants to violate plan terms, and therefore it essentially alleges defendants breached their fiduciary duties by not overriding plan terms.

The Sprint defendants contend this aspect of plaintiffs' imprudent investment claim must be dismissed because the plans were ESOP plans and, as such, the court must presume that the investment in company stock was prudent under the so-called "ESOP presumption" principle set forth in *Moench v. Robertson,* 62 F.3d 553 (3d Cir.1995), and *Kuper v. Iovenko,* 66 F.3d 1447, 1459–60 (6th Cir.1995). They contend the only time fiduciaries have a duty to override plan terms and divest plans of investments in company stock is when a company is threatened with an impending collapse. Defendants urge the court to follow decisions such as *In re Duke Energy ERISA Litigation,* 281 F.Supp.2d 786 (W.D.N.C.2003); *LaLonde v. Textron, Inc.,* 270 F.Supp.2d 272 (D.R.I. 2003), *aff'd in part and vacated in part,* 369 F.3d 1, 2–5 (1st Cir.2004); *Wright v. Oregon Metallurgical Corp.,* 222 F.Supp.2d 1224 (D.Or.2002), *aff'd,* 360 F.3d 1090 (9th Cir.2004); *Crowley ex rel. Corning, Inc. Investment Plan v. Corning, Inc.,* 234 F.Supp.2d 222 (W.D.N.Y.2002); and *In re McKesson HBOC, Inc. ERISA Litigation,* No. C00–20030, 2002 WL 31431588

---

**5.** The Sprint defendants contend this theory was not set forth in plaintiffs' complaint. The court disagrees. Plaintiffs' complaint alleges defendants breached their fiduciary duties by, among other things, allowing the plans to purchase and hold shares of Sprint stock. Certainly one of the ways in which defendants allowed this to occur was by not exercising their discretion to minimize the extent to which the Company Stock Fund was invested in Sprint stock. Thus, the complaint adequately places defendants on notice of this aspect of plaintiffs' claim.

(N.D.Cal. Sept. 30, 2002). The court has reviewed the cases cited by the Sprint defendants along with related case law, and ultimately finds this argument to be unpersuasive.

■ The Sprint defendants' argument rests on its characterization of the Company Stock Fund aspect of the plans as ESOPs. The court will assume, without deciding at this early stage in the litigation, that these aspects of the plans were ESOPs and, correspondingly, eligible individual account plans under ERISA. 29 U.S.C. § 1107(d)(3)(A). Such plans are exempt from ERISA's diversification requirement and its prudence requirement to the extent that it requires diversification with respect to company stock. *See* 29 U.S.C. § 1104(a)(2). Nevertheless, "an ESOP fiduciary, just as fiduciaries of other plans, is governed by the 'solely in the interest' and 'prudence'" standards set forth in 29 U.S.C. § 1104(a)(1)(A), (B). *Eaves v. Penn,* 587 F.2d 453, 459 (10th Cir.1978). Based on these principles, the Third and Sixth Circuits have adopted the ESOP presumption. *See Kuper v. Iovenko,* 66 F.3d 1447, 1459 (6th Cir.1995) (ESOP plan fiduciaries may be liable for continuing to invest in company stock, even though required by the plan, but plaintiff must establish the liability by showing that defendant abused its discretion and that a prudent fiduciary acting under similar circumstances would have made a different investment decision); *Moench v. Robertson,* 62 F.3d 553, 571–72 (3d Cir.1995) (ESOP plan fiduciary may be liable under ERISA for its decision to continue investing in company stock according to the plan's direction; the fiduciary's decision to continue investing in employer securities should be reviewed for an abuse of discretion). Under this presumption, a fiduciary is presumed to have acted with prudence by investing in employer stock, but a plaintiff may rebut this presumption by showing that the fiduciary abused his or her discretion because "the ERISA fiduciary could not have believed reasonably that continued adherence to the [plan's terms] was in keeping with the settlor's expectations of how a prudent trustee would operate." *Moench,* 62 F.3d at 571.

■ The court will assume, without deciding, that the Tenth Circuit would adopt the ESOP presumption espoused by Third and Sixth Circuit.[6] The next inquiry, then, is what precisely must be alleged in order to survive a motion to dismiss notwithstanding the ESOP presumption. *Moench* and *Kuper* did not address this issue. *See, e.g., Kuper,* 66 F.3d at 1459–60 (affirming the district court's ruling that no breach of fiduciary duty occurred where the district court made its decision on the basis of a full factual record); *Moench,* 62 F.3d at 572 (remanding to the district court to develop the factual record and determine whether the defendant was entitled to summary judgment). The First and Ninth Circuits have provided some guidance on this issue. In *Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090 (9th Cir.2004), the Ninth Circuit affirmed the district court's dismissal of the plaintiffs' claims based on the ESOP presumption. In doing so, the Ninth Circuit noted that it was not necessarily persuaded by the reasoning of the Third and Sixth Circuits in *Moench* and *Kuper,* but nevertheless held that even if the ESOP presumption applied

---

6. The Tenth Circuit certainly recognizes an ESOP fiduciary's duty of prudence notwithstanding the fact that ERISA eliminates an ESOP fiduciary's per se liability for failing to diversify. *Eaves v. Penn,* 587 F.2d 453, 459– 60 (10th Cir.1978). The Tenth Circuit has not, however, adopted the precise contours of the ESOP presumption as articulated by the Third and Sixth Circuits.

the plaintiffs' complaint could not withstand a motion to dismiss because documents attached to the plaintiffs' complaint demonstrated that the employer's financial situation had not seriously deteriorated. *Id.* at 1098–99. The court concluded that "[m]ere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Id.* at 1099. The court is persuaded that *Wright* and other cases cited by the Sprint defendants in which district courts have granted motions to dismiss based on the ESOP presumption stand for the proposition that weak, vague, and/or conclusory allegations, particularly those that simply allege a decline in employer stock value, are insufficient to rebut the ESOP presumption and withstand a motion to dismiss. *See, e.g., Duke Energy ERISA Lit.*, 281 F.Supp.2d at 794–95 (plaintiffs' allegations that employer stock was an "unsuitable investment" that was "unduly risky and trading at an inflated price" and some "vague allegations of 'lack of internal controls' and some 'underreporting of profits'" were insufficient to rebut ESOP presumption); *Crowley*, 234 F.Supp.2d at 230 (plaintiffs' conclusory allegations were insufficient to allege that fiduciaries abused their discretion by continuing to invest in company stock); *McKesson HBOC, Inc.*, 2002 WL 31431588, at *6 (same).

There is, however, ample authority to the contrary from numerous other district courts. *See, e.g., Pa. Fed'n v. Norfolk S. Corp. Thoroughbred Retirement Inv. Plan*, No. 02–9049, 2004 WL 228685, at *7 (E.D.Pa. Feb. 4, 2004) ("Although a drop in stock price and general weakness in the company's performance is not sufficient to win judgment on a breach of the duty of prudence, it is enough to survive a motion to dismiss."); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, Nos. 03–2218 & 03–2219, 2004 WL 758990, at *8 (D.Minn. Mar. 10, 2004) (declining to apply

ESOP presumption on a motion to dismiss); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F.Supp.2d 658, 668–670 (E.D.Tex.2004) (same); *Stein v. Smith*, 270 F.Supp.2d 157, 171–72 (D.Mass.2003) (same); *Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D.Mich.2003) (declining to rely on the ESOP presumption because whether the defendants breached their fiduciary obligations required the development of the facts of the case, and plaintiff stated a claim in that respect); *In re Ikon Office Sol'ns, Inc. Sec. Litig.*, 86 F.Supp.2d 481, 492 (E.D.Pa.2000) (denying motion to dismiss because "it would be premature to dismiss [the complaint] without giving plaintiffs an opportunity to overcome the presumption").

Ultimately, for purposes of resolving the Sprint defendants' motion to dismiss, the court finds most helpful the First Circuit's opinion in *LaLonde*, which provides an example of the type of detailed pleading that is sufficient to state a claim notwithstanding the ESOP presumption. The district court in *LaLonde* applied the ESOP presumption and found that plaintiffs had not alleged facts in their complaint sufficient to rebut the presumption. 270 F.Supp.2d at 280. The plaintiffs had alleged "a drop in the price of Textron common stock . . ., a decline in corporate profits, and an ongoing restructuring of the company." *Id.* The court explained: "It is common knowledge that the stock market suffered dramatic losses during 2000 and 2001, but the Plaintiffs fail to allege any facts that would indicate Textron or the Plan should have had reason to think the decline in the price of Textron stock was anything unusual or specifically related to Textron's viability as a company." *Id.* On appeal, the First Circuit reversed the district court on this issue. The First Circuit explained that the district court opinion "cannot withstand conventional Fed. R.Civ.P. 12(b)(6) scrutiny." 2004 WL

1039844, at *4. The Court pointed out that the district court failed to take into account the plaintiffs' allegation that Textron artificially inflated its stock price by concealing problems that are the subject of a separate federal securities lawsuit. *Id.* The court explained that when this allegation is "combined with the other allegations, it is sufficient to clear the Rule 12(b)(6) hurdle." *Id.* The court hypothesized the various types of evidence that discovery could theoretically reveal to support plaintiffs' theories, and concluded that "[t]he odds of plaintiffs succeeding on their breach of fiduciary duty claims against the Textron defendants might be very long, but that is not the test." *Id.* (quotation omitted).

■■■ The court is persuaded that the allegations in plaintiffs' complaint in this case are akin to those at issue in *LaLonde.* Plaintiffs' complaint alleges Sprint historically had a relatively conservative investment risk profile based on its established local and long distance telephone services and publishing telephone directories. That investment profile, however, was essentially transformed into that of a high-risk, high-cost startup company because of continual declines in Sprint's long-distance rates and corresponding profitability as well as its investment costs in the $2 billion ION venture. The Sprint/WorldCom merger was intended to help Sprint remain competitive. The Sprint defendants, however, allegedly knew but did not publicly announce that the Sprint/WorldCom merger was not going to receive the required regulatory approvals. The merger ultimately fell through. This gave rise to a securities fraud class action that originally served as the basis for a fourth claim in this case that has since been abandoned. Notably, the securities fraud case partially

survived a motion to dismiss, *see generally In re Sprint Corp. Sec. Litig.,* 232 F.Supp.2d 1193 (D.Kan.2002), and ultimately resulted in a $50 million settlement that is a matter of public record. Sprint abandoned the plans for its ION network and continued to develop programs to target poor-credit subscribers. At the same time, the Sprint defendants failed to disclose allegedly high-risk, aggressive, and inappropriate tax shelters that eventually led to the departure of Sprint's two top executives, Mssrs. Esrey and LeMay.[7] Meanwhile, Sprint stock eroded to the lowest investment grade, near-junk-bond status. In order to survive the Sprint defendants' motion to dismiss based on the ESOP presumption, plaintiffs must allege facts which, if true, allow a reasonable inference that the Sprint defendants abused their discretion by continuing to allow the plans to invest at all, or at least so heavily, in Sprint stock. Here, plaintiffs' complaint satisfies that standard. It reasonably can be inferred that the nature of Sprint's business transformed significantly—and not for the better—and that some of the plan fiduciaries acted in their own self interest at the expense of the plan beneficiaries by misrepresenting or failing to disclose material information; therefore, the settlor could not have reasonably anticipated that a fiduciary would continue to adhere to plan terms under those circumstances. Thus, the allegations in plaintiffs' complaint are sufficient to withstand the Sprint defendants' motion to dismiss on this issue.

■■■ In so holding, the court rejects the Sprint defendants' impending collapse theory, *i.e.,* that a plaintiff must plead the impending collapse of a company in order to overcome the ESOP presumption on a

---

7. This also gave rise to a securities fraud class action that partially survived a motion to dismiss. *See generally N.J. and its Div. of Inv. v.* *Sprint Corp.,* 314 F.Supp.2d 1119, 1123–50 (D.Kan.2004).

motion to dismiss. The genesis for the impending collapse terminology is *Moench*. In that case, the court opined that the "precipitous decline" in company stock combined with an insider fiduciary's knowledge of "its" (*i.e.,* the *stock's,* not the company's) "impending collapse" and the fiduciary's own "conflicted status" might constitute the type of change in circumstances that was not anticipated by the settlor of the trust. 62 F.3d at 571–72.[8] Thus, it is the insider fiduciary's knowledge of the impending collapse of company stock value combined with the insider's conflicted status (or perhaps similar troubling circumstances) that can constitute an abuse of discretion. *Moench* does not stand for the proposition that a plaintiff cannot state a claim if he or she does not allege that the employer company was inevitably doomed to failure. Notably, the case most heavily relied upon by the Sprint defendants, *Wright,* supports this conclusion. In *Wright,* the Ninth Circuit observed that "[u]nlike *Moench*, this case does not present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing." 360 F.3d at 1098.

Accordingly, the Sprint defendants' motion to dismiss plaintiffs' imprudent investment claim on the basis of the ESOP presumption is denied.

### 2. Claim II: Disclosure Claim

The Sprint defendants raise two arguments with respect to plaintiffs' disclosure claim. First, they contend plaintiffs' allegations are premised on a mistake that

SEC filings are made and disseminated pursuant to the federal securities laws in a corporate, not an ERISA fiduciary, capacity. Second, they contend the allegedly false statements made by Mssrs. Esrey and LeMay were not false when made nor were they made in an ERISA fiduciary capacity. Neither of these arguments warrant dismissal of plaintiffs' disclosure claim.[9]

### a. Statements Made in SEC Filings

"[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in 29 U.S.C. § 1104(a)(1)." *Varity Corp. v. Howe,* 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (quotation omitted). Thus, it is well settled that "whenever an employer exercises a fiduciary function, it must speak truthfully." *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 425 (5th Cir.2003); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 668 (2d Cir.1994) ("[W]hen a plan administrator speaks, it must speak truthfully." (quotation omitted)); *see, e.g., Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1501 (10th Cir.1995) (reversing district court's order of dismissal because allegations of affirmative misrepresentations were sufficient to state a claim for breach of fiduciary duty). Because ERISA defines fiduciary to include a person to the extent he or she has discretionary authority or responsibility to administer a plan, 29 U.S.C. § 1002(21)(A), and because ERISA requires a plan administrator to furnish accurate SPDs to participants, 29 U.S.C. § 1021(a), a person performs an ERISA fiduciary function

---

8. The Court suggested that under those circumstances it might be prudent to contract out investment decisions to an impartial outsider. *Id.* at 572.

9. The Sprint defendants' motion to dismiss plaintiffs' disclosure claim does not differentiate between the aspects of the plans with respect to which participants select among

investment options (*i.e.,* the employee contribution portions of all the plans and the employer contribution portion of the Centel Plan) and the aspects of the plans that are automatically invested in the Company Stock Fund (*i.e.,* the employer contribution portions of the Savings Plan and the Savings Plan for BUE).

when it disseminates SPDs to participants. *Cf. In re Unisys Corp. Retiree Med. Benefit ERISA Litig.,* 57 F.3d 1255, 1261 n. 10 (3d Cir.1995) ("[W]hen a plan administrator explains plan benefits to its employees, it acts in a fiduciary capacity.").

Plaintiffs' complaint alleges that from October 5, 1999, until the Sprint/WorldCom merger was abandoned, Sprint consistently represented in its public filings that the merger would be approved by government regulators and would close in the second half of 2000, when in fact the Sprint defendants knew or should have known that the merger would be rejected. The last of these statements was a Form 10–Q filed on May 11, 2000, which was notably *after* the Sprint defendants allegedly became aware by April of 2000 that the merger would probably not receive regulatory approval. Plaintiffs point out that their complaint alleges these SEC filings were incorporated by reference into the SPDs and prospectuses and that defendants were therefore acting in their ERISA fiduciary capacities when they made those representations. The court agrees. *See, e.g., In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 915–16 (E.D.Mich.2004) (statement in SPD that incorporated SEC filings that allegedly conveyed misleading information stated a claim for breach of fiduciary duty); *In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 877–79 (S.D.Tex.2004) (statement in prospectus that expressly " 'encouraged' plan participants 'to carefully review' " employer's SEC filings that allegedly contained misrepresentations stated a claim for breach of fiduciary); *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 765–67 (S.D.N.Y. 2003) (misrepresentation in SEC filing attached to prospectus stated a claim against employer for breach of fiduciary duty); *cf. In re Sears Roebuck & Co. ERISA Litig.,* No. 02–8324, 2004 WL 407007, at *6 (N.D.Ill. Mar. 3, 2004) (holding misrepresentations in SEC filings could form the basis for ERISA breach of fiduciary duty claims); *Rankin v. Rotts,* 278 F.Supp.2d 853, 875–78 (E.D.Mich.2003) (same).

The Sprint defendants contend that cases such as *In re Williams Cos. ERISA Litigation,* 271 F.Supp.2d 1328 (N.D.Okla.2003); *In re WorldCom, Inc.,* 263 F.Supp.2d 745 (S.D.N.Y.2003); and *Crowley ex rel. Corning, Inc. Investment Plan v. Corning, Inc.,* 234 F.Supp.2d 222 (W.D.N.Y.2002), dictate a different result. These cases, however, stand for the proposition cogently explained by the court in *WorldCom* that

> [t]hose who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations. Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings.

263 F.Supp.2d at 766. In *WorldCom,* the court dismissed the plaintiffs' claims against the board of directors because the mere fact that they were required to sign SEC filings was not sufficient to *transform* them into ERISA fiduciaries. *Id.* at 760. It was not alleged that the directors had any discretionary authority to manage or administer the plan, *id.* at 754–55, and therefore they were not ERISA fiduciaries. *See also, e.g., Williams Cos.,* 271 F.Supp.2d at 1338–39 (dismissing misrepresentation and nondisclosure claims against the company and the board of directors because the company was not a fiduciary with respect to the plan at all and the board of directors was a fiduciary only with respect to appointing and removing members of the committee that administered the plan); *Crowley,* 234 F.Supp.2d at 229 (dismissing misrepresentation and nondisclosure claims against the company

because it was not a fiduciary with respect to the plan). The district court in *World-Com*, however, went on to hold that false statements in SEC filings incorporated into a prospectus stated a claim against the company's president and chief executive officer as well as the company's employee benefits director, both of whom had discretionary authority for administering the plan. *Id.* at 754–55, 765–67. The key distinction, then, is that false statements in SEC filings cannot create fiduciary status, but they can form the basis for liability against a fiduciary.

Here, the Sprint defendants do not ask the court to differentiate among the fiduciary status of the various classes of defendants as the district court did in *WorldCom* (other than with respect to the director defendants as discussed *infra* Section IV(A)(3)), nor do they ask the court to define the precise contours of the scope of their duty to disclose. The court is presented with the sole argument that plaintiffs' disclosure claim against all of the Sprint defendants should be dismissed because Sprint's SEC filings cannot form the basis for fiduciary liability. The court simply rejects that broad contention because those filings were incorporated into the SPDs.

The Sprint defendants also contend they were attempting to comply with regulations relating to ERISA § 404(c) by incorporating Sprint's SEC filings into the plans' SPD and prospectus, and that doing so should not form the basis for fiduciary liability. The court disagrees. ERISA does not require compliance with § 404(c). Rather, § 404(c) simply provides "an escape from liability for fiduciaries in certain instances where a loss results from a participant's exercise of control." *Allison v. Bank One–Denver*, 289 F.3d 1223, 1239 (10th Cir.2002). Therefore, any actions taken by the Sprint defendants to attempt to comply with § 404(c) and its corresponding regulations were purely voluntary on Sprint's part. Having chosen this route, then, the Sprint defendants were obligated to speak truthfully. *See Martinez*, 338 F.3d at 424 (concluding that if an employer "chooses to communicate about the future of a participant's plan benefits, [it] has a duty to refrain from misrepresentations").

### b. Statements by Mssrs. Esrey & LeMay in Company Newsletter

The Sprint defendants also contend plaintiffs' disclosure claim should be dismissed with respect to the statements made by Mssrs. Esrey and LeMay in the September 1998 company newsletter. They contend these statements were not made in an ERISA fiduciary capacity, and further that they are mere predictions about future success, or "mere puffing," and therefore are not actionable as ERISA fiduciary misrepresentations.

In response, plaintiffs contend the Sprint defendants' arguments regarding Mssrs. Esrey and LeMay's fiduciary status is premature. The court agrees. The Supreme Court has held that a plan administrator acts in a fiduciary capacity when it explains plan benefits, even "the likely future of plan benefits," to its employees. *Varity Corp.*, 516 U.S. at 502–03, 116 S.Ct. 1065. The Supreme Court in *Varity* emphasized the fact-specific nature of ascertaining whether the plan administrator is acting in a fiduciary capacity when it concluded that "the factual context in which the statements were made, combined with the plan-related nature of the activity, engaged in by those who had plan-related authority to do so, together provide[d] sufficient support for the District Court's legal conclusion that [the company] was acting as a fiduciary." *Id.* at 503, 116 S.Ct. 1065. Here, the statements were made by Mr. Esrey, Sprint's chief execu-

tive officer and chairman of the board, and Mr. LeMay, Sprint's president and chief operating officer, in a company newsletter disseminated to employees, who it reasonably can be inferred were plan participants. It can also reasonably be inferred that these types of newsletters serve as forums for plan-related communications, and that individuals with plan-related authority are involved in creating and disseminating the newsletters. Thus, the court cannot say that it appears beyond a doubt that plaintiffs can prove no set of facts that would support a conclusion that the Sprint defendants were performing fiduciary functions by disseminating this information. *See, e.g., In re Elec. Data Sys. Corp. ERISA Litig.,* 305 F.Supp.2d 658, 665 (E.D.Tex.2004) (noting it is typically premature to decide fiduciary status at the motion to dismiss stage because the issue is a mixed question of law and fact, and fiduciary status under ERISA is generally construed liberally); *Stein v. Smith,* 270 F.Supp.2d 157, 173–74 (D.Mass.2003) (rejecting argument on motion to dismiss that CEO was not fiduciary with respect to various communications addressed to employees because plaintiffs might be able to show the specific contextual facts required by *Varity* in order to prove that he spoke while wearing his fiduciary hat).

The court also cannot say that it appears beyond a doubt that plaintiffs can prove no set of facts that would support a conclusion that the content of Mssrs. Esrey and LeMay's statements constituted a breach of fiduciary duty. "[A] fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.,* 93 F.3d 1171, 1182 (3d Cir.1996). A fiduciary's misrepresentation is material "if there is a substantial likelihood that it would mislead a reason-

able employee in making an adequately informed ... decision." *Jordan v. Fed. Express Corp.,* 116 F.3d 1005, 1015 (3d Cir.1997); *see also In re Enron Corp.,* 284 F.Supp.2d at 556 ("Courts have generally agreed that where an ERISA fiduciary makes statements about future benefits that misrepresent present facts, these misrepresentations are material if they would induce a reasonable person to rely on them."). Here, plaintiffs' complaint alleges that Mr. Esrey stated in a company newsletter that "[i]n the next five years with Sprint PCS and Sprint ION, we can create more value than exists in our current core business of local and long distance." Mr. LeMay stated that "[i]f Sprint seizes the advantage of becoming One Sprint, growth to $40 billion-plus in revenues, a market capitalization of $60 billion and a stock price of $140 can be realized in five years." The article in which these statements appear begins: "When it comes to competitive positioning in the telecommunications industry, one question that may arise is whether Sprint has the size necessary to compete and continue producing excellent returns for shareholders." Thus, it can reasonably be inferred that the statements made by Mssrs. Esrey and LeMay were intended to address the propriety of investing in Sprint stock, and they communicated such optimistic expectations that they could mislead reasonable employees into investing their retirement plans more heavily in Sprint stock than they would have otherwise been inclined to do.

The only case the Sprint defendants cite in support of their "mere puffing" argument is *Radley v. Eastman Kodak Co.,* 19 F.Supp.2d 89 (W.D.N.Y.1998). In *Radley,* however, the district court made the determination that the alleged misrepresentations were not material after a trial on the merits. The facts of this case may (or may not) ultimately dictate the same result as the district court reached in *Radley,* but

the allegations in plaintiffs' complaint are sufficient to state a claim on this issue. Accordingly, the Sprint defendants' motion to dismiss plaintiffs' disclosure claim is denied.

### 3. Claims Against the Director Defendants

The Sprint defendants contend all of plaintiffs' claims against the director defendants should be dismissed because their fiduciary duties under the plans were limited to appointing and removing members of the committee defendants and the trustee, and because plaintiffs' allegations demonstrate that the committee members the directors appointed were qualified. For the reasons explained below, the court agrees with defendants with respect to plaintiffs' imprudent investment and disclosure claims against the director defendants because they were not plan fiduciaries with respect to investments and disclosing information. Plaintiffs' complaint, however, adequately states a claim against the director defendants with respect to their failure to monitor the committees and trustees, and therefore the court will deny that aspect of the Sprint defendants' motion.

### a. Claims I & II Against the Director Defendants

■ A person is a fiduciary with respect to an ERISA plan only "to the extent" that he or she exercises discretionary authority or control over the management of the plan or its assets, or to the extent that he or she has discretionary authority or responsibility for administering the plan. 29 U.S.C. § 1002(21)(A). Members of the board of directors of an employer-sponsored plan fall within this general rule—that is, they are fiduciaries to the extent that they exercise discretionary authority or control regarding the management of the plan. 29 C.F.R. § 2509.75–8, at D–4. Thus, in order to determine the scope of the director defendants' fiduciary duties, the court must ascertain the degree of discretion they possessed or exercised under the plans.

■ Plaintiffs cite the allegations in paragraphs 2, 6, 21, 42, 79–81, and 121 of their complaint. These paragraphs generally allege that the director defendants were fiduciaries insofar as they were responsible for appointing and removing members of the Savings Plan and Investment Committees; appointing the trustee of the plans; ensuring that the individuals they appointed to the committees were qualified; monitoring the committee members to make sure they were performing their duties with respect to selecting investment options and investing plan assets; and conveying information to the committee members as necessary to allow them to perform their duties. The director defendants, however, contend their fiduciary duties under the plans did not include the last of these two duties—i.e., monitoring the committee members and providing the committee members with information. In support of this argument, they direct the court's attention to § 16.2 of the Savings Plan, § 15.2 of the Savings Plan BUE, and § 25 of the Centel Plan. According to the cited provisions in the Savings Plan and Savings Plan for BUE, the board of directors is responsible for appointing members of the Savings Plan Committee and Investment Committee, appointing the trustee, establishing the trust, and amending and terminating the plan and the trust agreement. According to the cited provision in the Centel Plan, the responsibility for administering and carrying out the plans is to be "vested in a committee designated by the Board."

Thus, according to the plans, the only discretionary—i.e., fiduciary—authority possessed by the board of directors was to appoint and remove committee members and the trustee. They were not charged

under the plans with responsibility for making investment decisions or communicating with plan participants. Accordingly, plaintiffs' imprudent investment and disclosure claims against the director defendants are dismissed because plaintiffs can prove no set of facts in support of these claims against the director defendants that would entitle them to relief on this theory.[10] *See, e.g., Crowley ex rel. Corning, Inc. Inv. Plan v. Corning, Inc.,* 234 F.Supp.2d 222, 229–30 (W.D.N.Y.2002) (dismissing similar imprudent investment and failure-to-disclose claims against director defendants who were charged under the plans only with the responsibility to appoint, retain, or remove members of the plan's investment committee); *Hull v. Policy Mgmt. Sys. Corp.,* No. 00–778–17, 2001 WL 1836286, at *6–7 (D.S.C. Feb. 9, 2001) (same; failure-to-disclose claim).

Notably, plaintiffs did not respond to the Sprint defendants' argument that the director defendants' fiduciary responsibilities were limited to this extent. Instead, plaintiffs point out that their complaint alleges the director defendants should be held liable as co-fiduciaries under ERISA § 405, 29 U.S.C. § 1105. In support of plaintiffs' co-fiduciary theory, they cite paragraphs 86, 106–107, and 119–120 of the complaint. These paragraphs, however, contain no factual allegations at all, but instead simply parrot the language of the co-fiduciary liability statute. *See, e.g., id.* (providing for co-fiduciary liability only where the co-fiduciary has knowledge of another fiduciary's breach, knowingly participates in or conceals a breach by another person, or enables such a breach by an active failure to comply with his own fiduciary obligations to the plan). "[I]n analyzing the sufficiency of the . . . complaint, the court need accept as true only the . . . well-pleaded factual contentions, not . . . conclusory allegations." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Here, plaintiffs have pleaded conclusory allegations that are insufficient to withstand the Sprint defendants' motion to dismiss on this issue. Accordingly, the Sprint defendants' motion to dismiss plaintiffs' imprudent investment and disclosure claims against the director defendants, insofar as those claims are based on a co-fiduciary liability theory, is granted.[11] *See, e.g., In*

---

**10.** This aspect of defendants' motion to dismiss is also granted as unopposed. In response to the Sprint defendants' contention that these claims should be dismissed against the director defendants based on their lack of fiduciary status, plaintiffs offered no response. Instead, they simply contended that the director defendants are liable on a co-fiduciary liability theory.

This aspect of plaintiffs' imprudent investment and disclosure claims against the director defendants is dismissed with prejudice because based on the plans' allocation of responsibilities to the directors it appears plaintiffs can prove no set of facts that would entitle them to relief on this theory.

Because Mssrs. Esrey and LeMay are director defendants, the court wishes to clarify the nature of the disclosure claim remaining in the case pertaining to the statements they made in the company newsletter. As explained, these individuals were not plan fiduciaries for purposes of disclosing information to plan participants *in their capacities as directors.* Thus, plaintiffs' disclosure claim is dismissed against all of the director defendants, even Mssrs. Esrey and LeMay. Nevertheless, with that being said, the statements in the company newsletter can fairly be attributed to them *in their capacities as Sprint employees.* Thus, plaintiffs' disclosure claim pertaining to the statements Mssrs. Esrey and LeMay made in the company newsletter remains in the case against Sprint.

**11.** Nevertheless, because the court can envision circumstances under which plaintiffs could state a claim against the director defendants based on a co-fiduciary liability theory, this aspect of plaintiffs' imprudent investment and disclosure claims (*i.e.,* the co-fiduciary liability aspect against the director defendants) is dismissed without prejudice to plaintiffs seeking leave to amend to assert these

re McKesson HBOC, Inc. ERISA Litig., No. 00–20030, 2002 WL 31431588, at *17 (N.D.Cal. Sept. 30, 2002) (granting motion to dismiss co-fiduciary claims where the plaintiffs' allegations were insufficient to put each defendant on notice of what he, she, or it had done to give rise to liability).

### b. Claim III Against the Director Defendants

The Sprint defendants also contend the court should dismiss plaintiffs' appointment claim against the director defendants. Specifically, they contend the director defendants' fiduciary responsibilities were limited to appointing and removing the committee members, hence the court should dismiss the aspect of the claim alleging the director defendants breached their fiduciary duty by failing to monitor and disclose information to the committee members. With respect to the aspect of the claim alleging a failure to appoint independent, qualified committee members, the Sprint defendants also contend the director defendants did not breach their fiduciary appointment duties as a matter of law because they appointed various senior and/or high level Sprint employees to serve as committee members. For the reasons explained below, the court disagrees. Accordingly, the Sprint defendants' motion to dismiss Claim III against the director defendants is denied.

### i. Failure to Monitor Aspect of Claim III

An interpretive bulletin issued by the Department of Labor addresses the extent of a fiduciary's duty to monitor its appointees:

Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?

A: *At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary* in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.

29 C.F.R. § 2509.75–8 at FR–17 (emphasis added); see also In re Enron Corp., 284 F.Supp.2d at 544 n. 48 ("Federal courts regularly cite to and rely upon Labor Department interpretive bulletins in determining the scope of ERISA liability and fiduciary responsibilities.") (citing Varity Corp. v. Howe, 516 U.S. 489, 511–12, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). Consistent with this opinion from the Department of Labor, courts have widely held that an appointing fiduciary has an ongoing duty to monitor its fiduciary appointees. See, e.g., Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 & n. 10 (4th Cir.1996) (holding the fiduciary authority to appoint, retain, and remove plan fiduciaries carries with it a duty to appropriately monitor those subject to removal); Martin v. Feilen, 965 F.2d 660, 669–70 (8th Cir. 1992) (holding a directors' power to appoint plan trustees makes him a fiduciary with the duty to monitor the actions of appointed trustees); Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 736 (7th Cir.1986) (holding fiduciaries responsible for selecting and retaining plan administrators have a duty to monitor the administrators' action); Leigh v. Engle, 727 F.2d 113, 135 (7th Cir.1984) (same).

claims on or before **June 18, 2004,** should they wish to do so.

Thus, the director defendants had a fiduciary duty to monitor their appointed fiduciaries (*i.e.*, the committees and the trustee) to make sure those appointees were performing their duties in compliance with the terms of the plans and ERISA. Plaintiffs' complaint alleges the director defendants failed to monitor the committee members' performance which permitted the plans to make the imprudent investments alleged above. Further, "[a]s a result of their fiduciary status, ... the Director Defendants had the duty to ensure that the Committee Defendants ensured that the Funds were prudent investments.... [T]he Director Defendants should have known that [Sprint stock was] an imprudent investment and should have required the Committees to take all of the steps necessary to protect the Plans from their massive losses." This allegation, combined with plaintiffs' other allegations concerning what the Sprint defendants allegedly knew based on both public and nonpublic information, is sufficient to state a claim against the director defendants for failing to monitor the committees. *See, e.g., In re CMS Energy Erisa Litig.*, 312 F.Supp.2d 898, 915–16 (E.D.Mich.2004) (holding similar allegations were sufficient to state a claim against directors for failing to monitor fiduciary appointees); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, at *8 (N.D.Ill. Mar. 3, 2004) (same).

Whether the director defendants had a related duty to disclose information to the committees presents a more novel issue. It seems this allegation, if true, could have determined the level of scrutiny the director defendants should have given to their appointees. In any event, the court finds it unnecessary to precisely define the contours of the duty to monitor at this early phase of the litigation, especially given the regulatory directive that the appropriate monitoring procedure "may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure." This issue is one that would more appropriately be resolved on the facts of the case. Suffice it to say that, for purposes of resolving the Sprint defendants' motion at this procedural juncture, the court simply rejects the Sprint defendants' argument that the directors were free to appoint the committee members, then turn a blind eye to the appointees' performance of their duties. *See, e.g., Hill v. BellSouth Corp.*, 313 F.Supp.2d 1361, 1370 (N.D.Ga.2004) (denying a motion to dismiss a similar claim involving allegations of a fiduciary's failure to monitor and disclose information to an appointee); *In re Electronic Data Sys. Corp. ERISA Litig.*, 305 F.Supp.2d 658, 671 (E.D.Tex.2004) (same; remarking that "at this stage of the proceedings, the Court will not endeavor to define the duty to monitor's outer edges with no factual record to indicate how far this case may or may not push those edges").

The court is unpersuaded that the cases relied upon by the Sprint defendants warrant a different result. For example, the Sprint defendants cite *Crowley v. Corning, Inc.*, 234 F.Supp.2d 222, 229–30 (W.D.N.Y. 2002). *Crowley*, however, did not involve failure-to-supervise-appointee claims like plaintiffs' Claim III in this case. Rather, it involved claims akin to plaintiffs' imprudent investment and disclosure claims in this case, *id.* at 229, which the court has dismissed, *supra*, citing *Crowley*. Another case cited by the Sprint defendants, *Hull v. Policy Management Systems Corp.*, No. 3:00–778–17, 2001 WL 1836286, at *6–*7 (D.S.C. Feb. 9, 2001), does not support their argument for similar reasons. Again, in *Hull*, the claims at issue were not failure-to-monitor-appointee claims. In fact, the court pointed out that the plaintiff had attempted to use her memorandum in opposition to defendant's motion to dismiss to recharacterize her alle-

gations against the defendant director as a failure of supervision, but the actual allegations in the complaint did not support that characterization. *Id.* at *7. Instead, the allegations in the complaint alleged only that the director defendant had a duty of disclosure to the plan, whereas the plan imposed no such fiduciary duty on the director defendant. *Id.* The court concluded that even if it were to assume a duty of supervision, "there are simply no allegations in the complaint adequate to support a claim for failure to supervise the Committee." *Id.* By comparison, here, plaintiffs have adequately alleged failure-to-supervise-appointee claims. These allegations distinguish plaintiffs' third claim from those at issue in *Crowley* and *Hull* and, as explained previously, are sufficient to withstand a motion to dismiss.

Defendants also cite *In re Williams Cos. ERISA Lit.,* 271 F.Supp.2d 1328 (N.D.Okla.2003). The district court in *Williams* actually did dismiss the plaintiffs' failure-to-supervise-appointee claims against directors because the board's authority under the plan was limited to appointing, retaining, and removing members of the committee. *Id.* at 1338–39. This court, however, respectfully believes that *Williams* was wrongly decided because it is contrary to the weight of authority from the Courts of Appeals regarding a fiduciary's duty to monitor fiduciary appointees. In addition, the court in *Williams* cited to the district courts' reasoning in *Crowley* and *Hull,* neither of which, as discussed previously, involved failure-to-supervise-appointee claims. Thus, the court is unpersuaded by the district court's reasoning in *Williams.*

### ii. Aspect of Claim III Involving the Propriety of Committee Member Appointments

█ Plaintiffs' complaint alleges that the committee members consisted of the following Sprint employees: Gene M. Betts, Senior Vice President, Treasurer of Sprint Corporation, and former Senior Vice President, Financial Services and Taxes; I. Benjamin Watson, Senior Vice President, Human Resources, and former Vice President, Finance and Administration; Randall T. Parker, Director, Corporate Benefits; J. Richard Devlin, Executive Vice President, Law and External Affairs; Robert Dellinger, Executive Vice President, Chief Financial Officer, and M. Jeannine Strandjord, Senior Vice President, Finance. The Sprint defendants contend the claim against the defendant directors for appointing these individuals to the committees fails to allege a breach of the director defendants' duty to appoint qualified committee members. They contend the employee committee members could not have lacked the necessary independence to be plan fiduciaries because ERISA authorizes employees to be appointed to these types of committees, and that the complaint alleges the committee members were qualified because they were various high and/or senior level employees who held legal, financial, and human resource positions. Certainly, the court agrees with defendants that the mere fact that these Sprint employees were appointed as plan fiduciaries is not a per se violation of ERISA. *See* 29 U.S.C. § 1108(c)(3) (stating that it is not a prohibited transaction for a plan sponsor to appoint its own employees to serve in fiduciary capacities). As plaintiffs point out, however, this only means that serving as both an employee and a fiduciary does not automatically give rise to an impermissible conflict of interest. Also, simply because these employees may have possessed extensive expertise in financial affairs does not necessarily mean that they were as a matter of law appropriate appointees to administer the plans.

Perhaps more importantly, though, plaintiffs' third claim does not rest solely

on the nature of the appointees. Rather, the nature of the appointees is an integral part of the claim. Specifically, plaintiffs' complaint alleges the director defendants breached their fiduciary appointment duties by "appointing Sprint employees who, by definition, lacked the independence necessary to make appropriate decisions"; by appointing "Committee Members who lacked the knowledge, skill, and expertise to perform their responsibilities"; by "fail[ing] to monitor their performance which permitted the Plans to make imprudent investments"; and by "fail[ing] to inform the Committees of the information the Committees needed to know to perform its [sic] duties." Thus, it is all of these factors, or perhaps some combination thereof, that constituted the defendant directors' alleged breach of fiduciary duty. It can reasonably be inferred that the director defendants' appointment of committees comprised primarily of Sprint employees, especially "higher ups" who it can reasonably be inferred had much to lose if the plans were significantly divested of Sprint stock, created the heightened risk of a conflict of interest that called for the directors to monitor the committees more closely than would otherwise be required, and further that their failure to monitor the committees and inform them of critical information pertaining to Sprint stock constituted a breach of their fiduciary duties. Thus, the court cannot say that it appears beyond doubt that plaintiffs cannot prove any set of facts that would entitle them to relief on this theory.[12]

### 4. ERISA § 404(c) Affirmative Defense

■ Lastly, the Sprint defendants contend that liability against them is preclud-

ed by ERISA § 404(c). 29 U.S.C. § 1104(c). Under that provision, where a plan participant exercises "independent control" over the assets in his or her account, a fiduciary is not liable for any loss that results from the participant's exercise of control. *Id.* § 1104(c)(1)(B). Because this provision essentially exempts a fiduciary from liability, a fiduciary seeking protection under § 404(c) has the burden of demonstrating that it applies. *Allison v. Bank One–Denver,* 289 F.3d 1223, 1238 (10th Cir.2002). This defendants cannot accomplish based on the allegations in plaintiffs' complaint, which specifically allege defendants did not shift liability for imprudent investments to plan participants under § 404(c) because they failed to comply with § 404(c) by, for example, failing adequately to declare that the plans were § 404(c) plans, failing to disclose to participants all material information necessary for participants to make informed investment decisions, and failing to provide an adequate description of the investment objectives and risk and return characteristics of the Company Stock Fund. Defendants will need to prove they are entitled to invoke this defense on the facts of the case. Resolution of this issue on a motion to dismiss is premature. *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 655 (S.D.Tex. 2003) (holding allegations in plaintiffs' complaint were sufficient to withstand dismissal based on § 404(c) defense asserted by defendants, and observing the issue cannot properly be resolved on a motion to dismiss); *Rankin v. Rots,* 278 F.Supp.2d 853, 872–73 (E.D.Mich.2003) (rejecting the defendants' argument that a § 404(c) defense could serve as the basis for granting a motion to dismiss; "Whether or not section 404(c) applies is not a question on a

---

12. Despite the Sprint defendants' admirable citation to an abundance of case law in support of their other arguments, they notably fail to cite any case in support of their argument that the court should dismiss this aspect of plaintiffs' appointment claim.

motion to dismiss."); *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 764 n. 12 (S.D.N.Y.2003) (rejecting the defendants' argument that a § 404(c) defense could serve as the basis for granting a motion to dismiss). Accordingly, the Sprint defendants' motion to dismiss on the basis of the ERISA § 404(c) affirmative defense is denied.[13]

### B. Fidelity's Motion to Dismiss

Plaintiffs' complaint only asserts one claim against Fidelity—the imprudent investment claim (Claim I). As such, the complaint alleges that Fidelity and the other defendants should have taken action to protect the plans from Sprint's risky business strategy such as minimizing or eliminating the plans' investments in Sprint stock. Although the complaint does not allege that Fidelity was aware of the allegedly material nonpublic information concerning, for example, the unannounced-but-anticipated failure of the Sprint/WorldCom merger and the risky tax shelters with Mssrs. Esrey and LeMay, it does allege that Fidelity was aware of the material public information that negatively impacted the value of Sprint stock. The complaint also alleges that Fidelity is liable as a co-fiduciary for the other defendants' breaches of fiduciary duties.

Fidelity now contends the court should dismiss plaintiffs' imprudent investment claim against Fidelity on the basis that Fidelity, as a directed trustee that did not possess discretion regarding the extent to which the plans were invested in Sprint stock, cannot be held liable for the plans' investment in Sprint stock. It appears

based on the allegations in plaintiffs' complaint and the contents of the trust agreement that Fidelity may very well be a directed trustee of the plans.[14] Indeed, plaintiffs do not really dispute that Fidelity is a directed trustee. Thus, the court will assume without deciding for purposes of resolving Fidelity's motion to dismiss that Fidelity is indeed a directed trustee. The issue, then, is whether Fidelity's status as directed trustee is sufficient to absolve it of liability as a matter of law for abiding by the terms of the plans and corresponding directives given by the Sprint defendants in accordance with the terms of the plans. For the reasons explained below, the court concludes that it is not.

The so-called "directed trustee provision" of ERISA, § 403(a)(1), provides that a trustee has

> exclusive authority and discretion to manage and control the assets of the plan, except to the extent that ... the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary *which are made in accordance with the terms of the plan* and *which are not contrary to this chapter....*

29 U.S.C. § 1103(a)(1) (emphasis added). Based on the plain language of this provision, a directed trustee will escape liability only if it relies upon directives that are proper, consistent with plan terms, and not contrary to ERISA. *See Maniace v. Commerce Bank,* 40 F.3d 264, 267–68 (8th Cir.

---

**13.** The Sprint defendants notably did not address this issue in their reply brief.

**14.** Plaintiffs' complaint alleges the Pension and Savings Trusts Committee had the duty to monitor the Investment Trusts Committee and the suitability of acquiring and holding Sprint stock. The trust agreement provides that Fi-

delity had "no responsibility for the selection of investment options" under the plans, states the Investment Trusts Committee "shall direct" Fidelity concerning the investment options in which participants may invest, and designates the "Company Stock Fund (Sprint Corporation Common Stock)" as a mandatory investment option.

1994) (directed trustee could be held liable if it acted upon directions that violated plan terms or were contrary to ERISA). Thus, the directed trustee provision modifies the extent of, but does not eliminate, a directed trustee's fiduciary duties. *See FirsTier Bank v. Zeller*, 16 F.3d 907, 911 (8th Cir.1994). A directed trustee may not comply with directives that the trustee knows or ought to know violate the fiduciary's duties to the beneficiaries, and the trustee must still conform to the prudent person standard of care. *Id.*

Based on the allegations in plaintiffs' complaint along with the terms of the plans and the trust agreement, the court could find that Fidelity was abiding by directives that satisfied, at most, only the second of these prongs, *i.e.*, the directives were consistent with plan terms that required Fidelity to offer as an investment option the Company Stock Fund consisting primarily of Sprint stock. The allegations in plaintiffs' complaint place Fidelity on notice that plaintiffs believe these directives were not proper and were contrary to ERISA because they were imprudent. Plaintiffs allege that Fidelity continued to invest in Sprint stock notwithstanding its awareness based on publicly available information of the allegedly plummeting worth of Sprint stock. Because plaintiffs have alleged facts which, if proven, could lead a reasonable jury to conclude that Fidelity followed directions that it knew to be contrary to ERISA, Fidelity's motion to dismiss is denied. *See, e.g., In re WorldCom*, 263 F.Supp.2d at 762 (denying directed trustee's motion to dismiss where the complaint alleged trustee "followed instructions to invest employee funds in WorldCom stock when a prudent trustee would know that WorldCom's decision to continue to offer its own stock to its employees as an investment option was imprudent"); *In re Enron*, 284 F.Supp.2d at 581–602, 663–65 (considering the issue of directed trustee

liability exhaustively and denying the trustee's motion to dismiss because, even if it was acting as directed trustee, it was "still required to determine whether its directions complied with ERISA and thus disregard allegedly improper instructions of the Administrative Committee"); *Kling v. Fid. Mgmt. Trust Co.*, 270 F.Supp.2d 121, 128–32 (D.Mass.2003) (denying what appears to have been an almost identical motion to dismiss by Fidelity in another case because Fidelity could still be found liable if it followed directions that were contrary to the plan or ERISA); *Koch v. Dwyer*, No. 98 Civ. 5519, 1999 WL 528181, at *10 (S.D.N.Y. July 22, 1999) (denying motion to dismiss where complaint alleged the directed trustee knew that investment in company stock was imprudent).

The cases relied upon by Fidelity in support of its motion to dismiss do not call for a different result. For example, in *Ershick v. United Missouri Bank*, 948 F.2d 660 (10th Cir.1991), the Tenth Circuit affirmed the district court's finding after a trial on the merits that the plaintiffs failed to establish that the directed trustee violated ERISA by following the plan directives. *Id.* at 667–68. The Tenth Circuit in *Ershick* applied legal principles consistent with those set forth above; it simply resolved the issue based on the facts of the case, whereas here the court is presented with the issue on a motion to dismiss, which involves quite different procedural standards. Similarly, in *Maniace v. Commerce Bank*, 40 F.3d 264 (8th Cir. 1994), the Eighth Circuit affirmed the district court's grant of summary judgment in favor of the directed trustee because the plaintiffs did not establish that the trustee's actions were contrary to plan terms or ERISA. *Id.* at 267–68. Again, the Eighth Circuit applied the same legal principles, but simply resolved the issue on the merits. In *Grindstaff v. Green*, 133 F.3d

416 (6th Cir.1998), the Sixth Circuit held that a directed trustee does not have a duty to investigate fiduciary directives. The proposition that a directed trustee does not have an independent duty to investigate, on the one hand, is quite distinct from the proposition that a directed trustee has a fiduciary duty to act with prudence based on what it knows or should know, on the other. Defendant also cites *LaLonde v. Textron*, 270 F.Supp.2d 272 (D.R.I.2003), which did in fact grant the directed trustee's motion to dismiss based on the stated proposition that a directed trustee "cannot be held liable for following the investment instructions provided by a plan's named fiduciaries." *Id.* at 281–82. This statement is of course contrary to the plain language of ERISA § 403(a)(1), discussed previously. Further, on appeal, the First Circuit affirmed this aspect of the district court's decision on the basis that there was nothing in the complaint to suggest that the trustee abused its discretion because the trustee was not alleged to have had knowledge of malfeasance within the company, but instead was only alleged to have learned that the stock price and profits were declining. *Lalonde v. Textron, Inc.*, 369 F.3d 1, 4 (1st Cir.2004). Notably absent from the First Circuit's one-paragraph discussion of this issue is any mention of the directed trustee provision that Fidelity here seeks to invoke. In *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir.2004), the Ninth Circuit's conclusion that the directed trustee was immune from liability rested on the court's determination that the underlying fiduciary direction itself was not a violation of ERISA, and thus the directed trustee's compliance with that direction could not serve as the basis for liability. *Id.* at 1102–03. By comparison, here the court cannot say at this early stage of the litigation that the directives from Sprint that Fidelity is relying upon did not necessarily violate ERISA. For these reasons, then, the court finds the various cases relied upon by Fidelity are, if anything, consistent with rather than contrary to the court's reasoning on this issue.

■ An observation by the district court in the *Enron* case aptly addresses the argument asserted by Fidelity: "Had Congress intended that the directed trustee be completely relieved of liability for following a named fiduciary's instructions, it could just as easily have stated so." 284 F.Supp.2d at 584. Instead, though, Congress has provided that a directed trustee is relieved of liability only if it follows fiduciary directives that are proper and consistent with the plan as well as ERISA. In this case, the allegations in plaintiffs' complaint are sufficient that, accepting them as true, the court cannot say that it appears beyond doubt that plaintiffs would not be entitled to relief on this theory. Accordingly, Fidelity's motion to dismiss based on ERISA's directed trustee provision is denied.

■ The court will, however, grant Fidelity's motion to dismiss plaintiffs' co-fiduciary claims against it. Plaintiffs contend that Fidelity's knowledge of publicly available information concerning Sprint stock is sufficient to allege Fidelity's co-fiduciary liability for the Sprint defendants' breach of their fiduciary duties of prudence. While that may be what plaintiffs now argue, that is not what their complaint alleges. Their co-fiduciary liability allegations against Fidelity are stated in paragraphs 86 and 106 of the complaint. Like plaintiffs' co-fiduciary claims against the director defendants, these allegations against Fidelity simply parrot the statutory language, *see* 29 U.S.C. § 1105(a), and contain no factual allegations sufficient to place Fidelity on notice of the basis for plaintiffs' co-fiduciary liability claims against it. Accordingly, Fidelity's motion to dismiss is granted with

respect to plaintiffs' co-fiduciary liability claims against Fidelity.[15]

**IT IS THEREFORE ORDERED BY THE COURT** that the Sprint defendants' motion to dismiss (Doc. 53) is granted in part and denied in part. Specifically, it is granted with respect to plaintiffs' imprudent investment claim (Claim I) insofar as that claim alleges defendants should have amended the plans to reduce or eliminate investments in Sprint stock, and plaintiffs' imprudent investment and disclosure claims (Claims I & II) against the director defendants, including the co-fiduciary aspect of those claims. The motion is otherwise denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** Fidelity's motion to dismiss (Doc. 51) is granted with respect to plaintiffs' co-fiduciary liability claims against Fidelity, and it is otherwise denied.

---

15. As with the director defendants, the court hereby dismisses plaintiffs' co-fiduciary liability claims against Fidelity without prejudice to plaintiffs filing a motion to seek leave to amend to assert these claims on or before **June 18, 2004**, if they wish to do so.